2006-NMSC-021

135 P.3d 230

Inquiry Concerning A Judge Nos.2004–097 & 2005–009.

**IN THE MATTER OF HONORABLE FLORENCIO "LARRY" RAMIREZ, District Judge, Third Judicial District, New Mexico.**

No. 29,552.

Supreme Court of New Mexico.

May 5, 2006.

As Corrected May 15, 2006.

**530**

James A. Noel, Esq., Randall D. Roybal, Esq., Albuquerque, New Mexico, for Judicial Standards Commission.

Lilley Law Offices, Michael W. Lilley, Esq., Lawrence W. Allred, Esq., Las Cruces, New Mexico, for Respondent.

## FORMAL REPRIMAND AND OPINION

PER CURIAM.

{1} This matter comes before the Court on a petition for discipline upon stipulation filed by the Judicial Standards Commission concerning the Honorable Florencio "Larry" Ramirez (Respondent). Following oral argument before this Court, we granted the petition and ordered the stipulated discipline against Respondent. Among other things, we ordered that Respondent receive a public reprimand, which we now issue in the form of this opinion.

{2} These disciplinary proceedings arise out of two separate incidents of misconduct involving Respondent. The first incident concerns Respondent's actions in his own courtroom in an unrelated matter. The second incident concerns actions Respondent took when his son was cited for drinking in public. Based on the Commission's stipulated findings of fact, we summarize the events surrounding both of these incidents and then proceed to discuss why Respondent's actions warrant disciplinary sanctions.

## FACTUAL BACKGROUND

{3} Respondent is a district court judge in the Third Judicial District. In the first incident, while acting in his judicial capacity during a juvenile court hearing, Respondent failed to be patient, dignified, and courteous toward a defense attorney appearing before him. In particular, Respondent raised his voice with the attorney, prevented the attorney from making her full objections for the record, and admonished her in front of her client.

{4} The second, unrelated, incident involved actions Respondent took when Las Cruces Police Department officers cited his son and his son's friends, all of whom were 21 years of age or older, for drinking alcoholic beverages in public in violation of local municipal ordinance. As the officers were issuing the citations, Respondent identified himself to one of the officers as his son's father by showing the officer his court identification card and his driver's license. Respondent also asked the other officer issuing citations if she remembered who he was. The officer said she did remember him but continued issuing the citations. Respondent maintains that he was not attempting to intimidate the officers or gain preferential treatment, but was merely identifying himself and confirming his son's identity at his son's request. However, Respondent now acknowledges the impropriety of using his judicial title and court identification card in connection with the matter.

{5} After the officers issued the citations, Respondent collected all eight citations from the recipients, who were now standing in a group. Respondent maintains that he collected the citations because he was going to inquire about the possible penalties for the citations. As the police officers were leaving the park, they reported hearing laughter from the group of young men with Respondent and that some of them were looking back at the officers. Respondent maintains that no laughter was directed at the officers. Respondent subsequently left the park in his vehicle, but his involvement in the matter did not end.

{6} Respondent subsequently asked his volunteer court bailiff to assist Respondent's son and his friends in responding to the citations in the Las Cruces Municipal Court. Specifically, Respondent gave the original citations to his bailiff, who prepared and filed written waiver of arraignment and entry of plea (not guilty) forms with the Las Cruces Municipal Court.

{7} Subsequently, notices of pretrial conference were mailed to all eight of the citation recipients. The pretrial conference was

scheduled before Judge Melissa Miller–Byrnes on August 11, 2004. However, prior to that date, Respondent called for Las Cruces Municipal Court Judge James T. Locatelli and left a message with Judge Locatelli's assistant. Respondent asked that Judge Locatelli return his call and advised that Respondent was sending in his son and a couple of his son's friends to change their pleas on August 4, 2004. However, Respondent maintains that his son and some of the other citation recipients wanted to appear on August 5, 2004.

{8} In any event, Judge Miller–Byrnes was scheduled to perform public arraignments on August 4, 2004, and Judge Locatelli was scheduled to perform public arraignments on August 5, 2004. Only one of the citation recipients appeared before Judge Miller–Byrnes on August 4. At that time, he changed his plea to "no contest," and received a deferred sentence, including a deferred fine of $500.

{9} In contrast, the next day five of the citation recipients, including Respondent's son, appeared before Judge Locatelli. Respondent also came to the court that day but maintains that he was there to confirm that his son had appeared for the hearing and left prior to the commencement of any hearings. In any event, all five citation recipients changed their pleas to "no contest," and four of the five men (including Respondent's son) received 90–day deferred sentences and were each required to pay $35 in fees. The fifth citation recipient had an outstanding DWI case pending before the court, so Judge Locatelli consolidated the cases and deferred the sentencing on the drinking in public citation until completion of the DWI trial.

{10} On August 11, the day originally scheduled for pre-trial conferences, the remaining two citation recipients appeared before Judge Miller–Byrnes. The prosecuting police officers also appeared at that time. In both cases, the citation recipients and the police officers agreed to a change of plea on stipulation that the sentences would be deferred. Judge Miller–Byrnes approved the agreements and sentenced each man to a 6–month deferred sentence and a deferred fine of $500.

{11} Respondent concedes that the foregoing conduct violates several provisions of the Code of Judicial Conduct and constitutes willful misconduct in office. For the reasons that follow, we agree.

## DISCUSSION

■ {12} Respondent's actions illustrate the need for all judges to remain cognizant of their ethical obligations both on and off the bench. The first incident recounted above involves a task commonly faced by every judge—maintaining order and decorum in the courtroom while remaining patient, dignified and courteous to those appearing before the court. See Rules 21–300(B)(3) and (4) NMRA 2006. Respondent's conceded violations of the Code of Judicial Conduct establish that he failed to strike the proper balance in his courtroom. See Rule 21–300(4) Committee Commentary ("Judges can be efficient and businesslike while being patient and deliberate.").

{13} By raising his voice to an attorney appearing before him, Respondent did not maintain decorum in the courtroom or display the kind of dignified and courteous behavior expected of every judge. We are loathe to conceive of a situation when the behavior exhibited by Respondent would be appropriate, but suffice it to say that Respondent's outburst was not appropriate in this instance. And while there may be times when it is appropriate, and even necessary, for a judge to admonish an attorney, Respondent recognizes that his conduct was unwarranted in this instance.

■ {14} The most troubling aspect of Respondent's behavior toward the attorney appearing before him was that Respondent's actions prevented the attorney from making her full objections for the record. Attorneys are expected to make objections on the record to judicial rulings that they believe are in error. See Rule 1–046 NMRA 2006; Rule 5–601 NMRA 2006; Rule 11–103 NMRA 2006. Such objections are a basic precondition to effective appellate review. See Rule 12–216(A) NMRA 2006. Judicial outbursts that interfere with this common, necessary element of trial proceedings will not be condoned. See Rule 21–300(B)(7) NMRA 2006

("A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."); Rule 21–300(B)(2) and (8).

{15} As for the second incident of misconduct recounted above, Respondent's actions are a reminder that the behavior of a judge should be as circumspect off the bench as it is on the bench. *See* Rule 21–200(A) ("A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); Rule 21–500(A). From the perspective of a parent, Respondent's attempts to assist his son during a time of trouble may be understandable. And though the child may be an adult, we recognize that the protective impulses of a parent do not cease. Nevertheless, as a judge, Respondent is expected to regulate his behavior in a way that other parents are not. *See* Rule 21–200(B) ("A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment.").

> A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

\* \* \*

> The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.

Rule 21–200(A) Committee Commentary.

{16} We recognize that Respondent maintains he did not intend to threaten the officers who were issuing the citations or seek preferential treatment for his son and his son's friends. But by identifying himself as a judge and asking one of the officers if she knew who Respondent was, the only reasonable view of the encounter is that Respondent was attempting to curry favor based on his status as a judge. Such behavior is an obvious violation of the Code of Judicial Conduct and cannot go unsanctioned. *See* Rule 21–200(B) ("A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others.").

{17} Moreover, even if we were to excuse Respondent's initial actions at the park as the protective impulses of a parent, Respondent's subsequent actions are simply inexcusable. By calling a municipal court judge to reset hearings and then appearing at the municipal court on the day his son was to appear, Respondent's actions can only be viewed as a flagrant attempt to use his status as a judge to influence the course of the criminal proceedings against his son and his son's friends. *Id.* We cannot expect the public to trust in the impartiality and integrity of the judiciary if we allow even the appearance of judicial impropriety to go unchecked.

> Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities.

Rule 21–200(B) Committee Commentary.

{18} Unfortunately, not only did Respondent act inappropriately in his own right, but regrettably, he also solicited his bailiff to do the same on his behalf. Regardless of the fact that his bailiff was not a paid employee, Respondent is responsible for ensuring that his staff behave with the same level of propriety that Respondent is expected to display. *See* Rule 21–300(C)(2) ("A judge shall inform and require the judge's staff, court officials and others subject to the judge's direction and control to observe the standards of confidentiality, fidelity and diligence that apply to the judge and to refrain from manifesting bias and prejudice in the performance of their official duties."). Instead, Respondent directed and encouraged his volunteer bailiff to violate the same standards of conduct that Respondent is sworn to uphold.

{19} In short, by failing to appreciate the impact of his actions inside and outside the courtroom, intended or not, Respondent violated several provisions of our Code of Judicial Conduct. Accordingly, we agree that the stipulated disciplinary sanctions for Respondent's violations of the Code of Judicial Conduct are appropriate. Therefore, Respondent, the Honorable Florencio "Larry" Ramirez, is hereby disciplined as follows:

a. Respondent shall receive a formal reprimand from the Supreme Court, which shall be published in the *Bar Bulletin.*

b. Respondent shall successfully complete six (6) months of supervised probation and formal mentorship concerning the obligations and restrictions imposed by the Code of Judicial Conduct, including but not limited to proper judicial temperament and demeanor, prohibitions against the use of judicial office to advance private interests, and restrictions on the use of the prestige and incidents of judicial office. The Judicial Standards Commission will recommend to the Supreme Court, for approval and appointment, the person to serve as Respondent's mentor while on probation. The Respondent's mentor shall report on the progress and outcome of the probation and mentorship program to the Supreme Court and the Commission.

c. Respondent shall successfully complete the October 2005 "Ethics for Judges" course at the National Judicial College at his own expense. Respondent shall provide the Commission with documented proof of his compliance with this provision by promptly providing a certificate of successful completion and an affidavit concerning course attendance at his own expense (including copies of receipts).

d. Respondent shall reimburse the Judicial Standards Commission in the amount of $1,500.00 for costs and expenses incurred up to the date of the stipulated agreement. Payment shall be by certified check made payable to the State of New Mexico and delivered to the Judicial Standards Commission.

e. Respondent shall abide by all terms and conditions of the plea and stipulated agreement and the Code of Judicial Conduct.

f. The parties shall bear their own costs and expenses incurred in this matter.

{20} **IT IS SO ORDERED.**