2007-NMSC-028

161 P.3d 876

**In the Matter of Carlos GARZA, Magistrate Court Judge, Dona Ana County, New Mexico.**

**No. 29,764.**

Supreme Court of New Mexico.

June 13, 2007.

James A. Noel, Elizabeth A. Garcia, Albuquerque, NM, for Judicial Standards Commission.

Carlos Garza, Las Cruces, NM, for Respondent.

## OPINION

PER CURIAM.

{1} The Constitution of the State of New Mexico vests the judicial power of the state in the courts. *See* N.M. Const. art. VI, § 1. As individuals who have been entrusted with that power by the people, we as members of the judicial branch must recognize that it is never to be taken lightly or abused. Drafters of our constitutional safeguards wisely recognized the potential for abuse of judicial power and how, if left unchecked, exploitations by individual judges could weaken the judiciary and our system of government. Accordingly, our constitution provides for disciplining or removing judges for, among other infirmities, willful misconduct in office.

*See* N.M. Const. art. VI, § 32. Although we have only rarely exercised our constitutional power to remove a judge, *see In re Castellano*, 119 N.M. 140, 889 P.2d 175 (1995), the situation before us commands that grave result. We now order, upon petition of the Judicial Standards Commission, and pursuant to Article VI, Section 32 of the New Mexico Constitution, that Respondent Carlos Garza be permanently removed from judicial office.

## BACKGROUND

{2} Respondent was a full-time magistrate court judge for the Doña Ana County Magistrate Court. These disciplinary proceedings arise out of separate incidents of misconduct while Respondent served in that capacity. Those incidents of misconduct involve improperly interjecting himself in the magistrate court criminal case of a defendant with whom he had developed a personal relationship, twice repeating similar abuses of his judicial position by trying to intervene on behalf of that same person in the criminal justice context and, perhaps most egregious, his illegal drug use.

{3} Respondent's course of misconduct began with his improper involvement in the Doña Ana County Magistrate Court matter of *State v. Lauren Spilsbury*. Respondent was initially assigned to Ms. Spilsbury's criminal case, which included charges against her of Driving While Under the Influence of an Intoxicating Liquor or Drug (DUI), Resisting a Police Officer and various traffic offenses. After accepting Ms. Spilsbury's guilty plea to some of the offenses and sentencing her, which included three hundred sixty-four days of supervised probation, Respondent recused himself from Ms. Spilsbury's case due to a personal relationship that he had developed with her after sentencing.

{4} Ms. Spilsbury's case was then reassigned to Doña Ana County Magistrate Court Judge Maria Rodriguez. On the day of a scheduled video appearance before Judge Rodriguez in the same cause, Respondent told Judge Rodriguez he knew Ms. Spilsbury was scheduled to appear before her and that he did not think it was fair for Ms. Spilsbury to be punished on account of

her friendship and past relationship with him. If any ambiguity about Respondent's efforts remained, he made his intention to influence the hearing's outcome clear by asking Judge Rodriguez to make special concessions with regard to Ms. Spilsbury's bond.

{5} Subsequently, Ms. Spilsbury was again before the magistrate court for a hearing on a probation violation in the same cause. The case at that time was assigned to then-Magistrate Court Judge Susana Chaparro. Prior to the hearing, Respondent twice spoke to Judge Chaparro in an effort to influence the disposition. Respondent also went to Judge Chaparro's courtroom on multiple occasions that day to inquire about Ms. Spilsbury's case.

{6} Respondent again involved himself in Ms. Spilsbury's legal affairs on two other occasions. First, months after having been notified that the Commission was investigating his communications to other magistrate court judges regarding Ms. Spilsbury's DWI case, Respondent instructed clerks for the Doña Ana County Magistrate Court to issue a clearance for Ms. Spilsbury's driver's license in the very same case.

{7} Second, less than two months later, Respondent was a passenger in a car driven by Ms. Spilsbury when a law enforcement officer stopped her for speeding. As the officer approached the car, he overheard Respondent tell Ms. Spilsbury, "Don't worry, I'll take care of this." During the traffic stop, Respondent leaned over toward the driver's side, looked at the officer and asked, "Do you know who I am?"

{8} Respondent's poor judgment was not limited to the Spilsbury matters. He displayed bizarre behavior that was noticeable to court employees during the same general time period, including just a couple of days prior to the traffic stop incident, and that gave rise to suspicions of illegal drug use.

{9} After obtaining affidavits from two court employees and a letter from the Magistrate Advisory Committee detailing Respondent's suspicious behavior, the Commission issued an order that Respondent submit to drug testing pursuant to Judicial Standards Commission Rule 8(A) and Supreme Court of New Mexico Order No. 04–8200 (June 16, 2004) [hereinafter "Judicial Drug Policy Order"] (attached as Appendix). The following day, a law enforcement officer attempted to serve Respondent with the drug testing order at his home. Although Respondent was not home, an apparent friend was there and telephoned Respondent for the officer. During the telephone conversation the officer told Respondent that the papers he was attempting to serve were from the Judicial Standards Commission and the two made arrangements to meet in order to effectuate service. Respondent then contacted the Commission's general counsel to ask what the papers were for and was told that he was being served with an order to submit to drug screening.

{10} The officer waited for Respondent at an agreed-upon location for nearly an hour. However, despite having made explicit arrangements to do so, Respondent never met with the officer to accept service. Later that morning, after observing Respondent's car parked in front of his home, the officer knocked on the door of Respondent's home and rang the door bell and, when no one answered, posted the order on Respondent's door. That afternoon, the officer observed that the order was no longer posted on Respondent's door and that it was not lying on the ground in the area.

{11} The following Monday, Respondent went to S.E.D. Laboratory at almost closing time. By then, more than seventy-two hours had passed since he first learned of the Commission's order. Respondent told the office coordinator (who is also the laboratory technician) that, upon the advice of counsel, he was not going to allow her to collect samples pursuant to the order, nor would he sign the authorization form to release drug screening results to the Commission. The office coordinator instructed Respondent that his refusal to sign the authorization form and provide samples would constitute a refusal of the order.

{12} Instead of complying with the order for specific testing, the results of which were to be submitted to the Commission, Respondent ordered his own tests to obtain results that would only be made available to him.

Not until this Court mandated that Respondent comply with the Commission's order, over a month after he initially learned of that order, did he submit to the requisite drug testing. Despite Respondent's efforts to avoid drug testing, Respondent tested positive for cocaine and cocaine metabolites.

{13} As for the procedural history, this Court originally heard argument on a petition for discipline upon stipulation filed by the Commission for Respondent's initial improper post-sentencing involvement in Ms. Spilsbury's DUI case, which we granted. We ordered the stipulated recommended sanctions against Respondent, including a formal reprimand, the function of which this opinion encompasses.

{14} The Commission later initiated investigations of Respondent regarding the clearance of Ms. Spilsbury's license and the incident with the traffic stop. The Commission subsequently issued the order for drug testing pursuant to Judicial Standards Commission Rule 8(A) and the Court's Judicial Drug Policy Order. Due to Respondent's lack of compliance with the drug testing order, and upon the Commission's verified petition, we mandated that Respondent immediately submit to drug testing pursuant to the Commission's Rule 8 order and that he be suspended without pay for thirty days.

{15} The Commission then held formal proceedings and made numerous findings of fact and conclusions of law. It ultimately filed a petition for permanent removal from office with this Court. Having fully heard the matter, we grant that petition.

## DISCUSSION

{16} "The conduct prescribed for judges and justices is more stringent than conduct generally imposed on other public officials." *In re Romero*, 100 N.M. 180, 183, 668 P.2d 296, 299 (1983). Respondent's use of cocaine, which is unlawful to possess under the Controlled Substances Act, is egregious willful misconduct. *See* NMSA 1978, §§ 30–31–8, –23 (2005). It is indisputable that Respondent violated multiple Canons of Judicial Conduct by consuming cocaine while serving as a magistrate court judge. *See* Rule 21–100 NMRA (requiring judges to establish, maintain and enforce high standards of conduct, and to personally observe those standards so as to preserve the integrity and independence of the judiciary); Rule 21–200(A) NMRA (requiring judges to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Rule 21–500(A) NMRA (requiring judges to conduct their extra-judicial activities so that they do not cast doubt on their capacity to act impartially as a judge, demean the judicial office, interfere with the proper performance of judicial duties, or violate their oath and obligation to uphold the laws of the United States and State of New Mexico).

{17} In addition to demonstrating poor judgment, Respondent's drug use was inconsistent with the very laws he had sworn to uphold. *See* Rule 21–100; Rule 21–200(A); Rule 21–500(A); *see also* NMSA 1978, § 30–31–23 (2006). His use of cocaine jeopardized the integrity of the judiciary as an institution, which is essential to its efficacy, and also rendered Respondent, as a practical matter, beholden to the vulnerabilities that accompany drug use. *See* Rule 21–100; Rule 21–200(A); Rule 21–500(A). Citizens appearing before a judge who is known to have used illegal drugs while serving as a judge would be unable to avoid feeling the subjects of hypocrisy and, consequently, respect for the judiciary would be diminished. Furthermore, law enforcement officers, as well as defendants, who rely on judges' objective decision-making would have to question what influences were at play in the decision-making process. Even if he was not under the influence of cocaine during business hours, illegal drug use by a judge cannot be tolerated. A judge is a judge at all times. *See In re Ramirez*, 2006-NMSC-021, ¶ 15, 139 N.M. 529, 135 P.3d 230 (per curiam) ("Respondent's actions are a reminder that the behavior of a judge should be as circumspect off the bench as it is on the bench.").

{18} Respondent's willful and knowing evasion of service of the Commission's drug-testing order and his refusal to comply with that order also constitute willful misconduct. *See* Judicial Standards Comm'n Rule

4(D) ("The failure of any judge under investigation to comply with the reasonable requests or directives of the Commission may be considered willful misconduct in office by the commission."); Rule 21–100; Rule 21–200(A); Rule 21–500(A). It is apparent that, knowing the order's purpose, Respondent avoided following through on the arrangements he personally made with the officer who was to serve it upon him. Moreover, even after he went to the testing facility—and was indisputably aware of the order—he flagrantly refused to submit to the specified testing. His deliberate efforts to elude ordered drug testing demonstrated his lack of regard for the judiciary, his judicial position, and the law. *See* Rule 21–100; Rule 21–200(A); Rule 21–500(A).

■ {19} Respondent's original incidents of misconduct (his efforts to influence other magistrate court judges in Ms. Spilsbury's DWI case) as he admitted in the petition for discipline upon stipulation, violated multiple provisions of the Code of Judicial Conduct that amounted to willful misconduct in office as well. *See* Rule 21–100; Rule 21–200(A), (B) (prohibiting judges from allowing family, social, political or other relationships to influence their judicial conduct or judgment, and from lending the prestige of judicial office to advance private interests); Rule 21–300(B)(2) NMRA (requiring judges to be faithful to the law); Rule 21–500(A). We acknowledge, based on the stipulated findings of fact, that Respondent properly recused himself from Ms. Spilsbury's case when he developed a personal relationship with her. *See* Rule 21–400(A) NMRA ("A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...."). Nonetheless, his recusal cannot cloak his subsequent actions in legitimacy and, ironically, underscores the impropriety of his later involvement in the matter. *See, e.g.,* Rule 21–200(A), (B); *see also In re McBee,* 2006-NMSC-024, ¶ 14, 139 N.M. 482, 134 P.3d 769 ("In fact Respondent initially agreed to recuse from the case.... But by ultimately breaching that agreement and reinserting himself in [the defendant's] case, Respondent again displayed an ignorance of, or indifference to, basic judicial responsibilities embodied in our Code of Judicial Conduct.").

{20} Through actions that had only begun to reveal his proclivity for abusing his power, Respondent impugned the most basic tenet of judicial conduct—that a judge shall uphold the integrity and independence of the judiciary. *See* Rule 21–100. Despite his apparent awareness of the necessity to stay clear of Ms. Spilsbury's case, as evidenced by his recusal, Respondent improperly used his position as a judicial officer to attempt to obtain favorable outcomes in judicial proceedings for an individual in whom he had a personal interest. *See* Rule 21–100; Rule 21–200(A), (B); Rule 21–300(B)(2), (7) (requiring judges to accord every person who has a legal interest in a proceeding or such person's lawyer the right to be heard according to law); Rule 21–500(A).

{21} In addition, Respondent's efforts to influence other judges interfered with the proper performance of judicial activities. *See* Rule 21–500(A)(3). Respondent not only denied the State the opportunity to address Respondent's requests for leniency on behalf of a defendant, but he encroached on his contemporaries as well. *See* Rule 21–100; Rule 21–200(A), (B); Rule 21–500(A). As made clear by his admitting to having had a personal relationship with Ms. Spilsbury, Respondent was not consulting with the other magistrate judges as a disinterested judge in order to aid them in carrying out their adjudicative responsibilities. *See* Rule 21–300 commentary (indicating that the proscription against communications concerning a proceeding "does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out his adjudicative responsibilities"). In essence, Respondent rendered himself a personally interested de facto adviser on the subjects of Ms. Spilsbury's bond and case disposition. His actions demeaned the judicial office and, if left unchecked, are precisely the kind of improprieties that would certainly undermine confidence among others who come before the judiciary without the inappropriate benefit of internal advocacy. *See* Rule 21–200(A), (B); Rule 21–500(A); *see also* Rule 21–100; Rule 21–300(B)(2).

{22} Additionally, prior to his recusal, Respondent developed a personal relationship with a defendant over whose case he had only recently presided and whom he had sentenced to probation. Inferring from the stipulated facts, Ms. Spilsbury would have been serving the probationary sentence at the time Respondent's relationship with her developed, and, as made all too clear by Ms. Spilsbury's eventual probation revocation proceedings, that probation would have been, and was, subject to the ultimate authority of the magistrate court. *See, e.g.,* Rule 6–802 NMRA (setting forth the procedures for exercising the court's power, including that "[t]he court shall have the power to suspend or defer a sentence and impose conditions of probation during the period of suspension or deferral" and that "[a]t any time during probation, if it appears that the probationer may have violated the conditions of probation," the court may issue a warrant for the arrest of the probationer and may order the probationer to serve the balance of the sentence in incarceration). In that respect, among other breaches, Respondent failed to conduct his extrajudicial activities so as to not cast doubt on his capacity to act impartially as a judge, demean his judicial office, or interfere with properly performing his judicial duties. *See* Rule 21–500(A); *see also* Rule 21–100; Rule 21–200(A); *In re Ramirez*, 2006–NMSC–021, ¶ 15, 139 N.M. 529, 135 P.3d 230.

{23} After Respondent had been notified that the Commission was investigating his communications to other magistrate court judges regarding Ms. Spilsbury's DWI case, he again involved himself in that very matter. We could almost repeat our analysis of the initial violation involving Ms. Spilsbury but find it sufficient to say that Respondent should have stayed clear of any association with her case, particularly in light of him knowing that he was being investigated for incidents specifically related to that matter. *See* Rule 21–100; Rule 21–200(A), (B); Rule 21–500(A). Respondent's conduct illustrates that he was unwilling to accept the significance of his recusal and the necessity to avoid even the appearance of impropriety. "[R]epetition of the very conduct that had been characterized by the Commission as improper cannot be said to be anything other than willful judicial misconduct." *Castellano*, 119 N.M. at 149, 889 P.2d at 184.

{24} Likewise, Respondent's comment to the officer during the traffic stop of Ms. Spilsbury—"Do you know who I am?"—constitutes comparable willful misconduct. His comment was an obvious attempt to intimidate or influence the officer in order to gain preferential treatment for Ms. Spilsbury. That conclusion is bolstered by the comment overheard by the officer as he approached the car, that Respondent would "take care of this." Despite his inescapable awareness of the impropriety of his prior attempts to gain preferential treatment in magistrate court proceedings for Ms. Spilsbury, Respondent demonstrated the same type of behavior we have already twice addressed, and he repeated nearly the same violations only in another arena. *See* Rule 21–100; Rule 21–200(A), (B); Rule 21–500(A). His conduct established an alarming pattern of using his judicial office to attempt to intervene on behalf of Ms. Spilsbury and constitutes willful misconduct in office. *See Castellano*, 119 N.M. at 149, 889 P.2d at 184.

{25} As we have determined, Respondent's use of illegal drugs, efforts to avoid ordered drug testing, and pattern of using his position in attempts to benefit someone in whom he was personally interested violated numerous canons of judicial conduct and constituted willful judicial misconduct. *See Castellano id.* at 150, 889 P.2d at 185. We are, consequently, entrusted with taking appropriate disciplinary measures. *See* N.M. Const. art. VI, § 32.

**APPROPRIATE DISCIPLINE**

{26} "Whether the discipline that is appropriate is removal or a lesser sanction is separate from the question of whether the evidence supports a determination that the judge's actions constituted willful judicial misconduct." *Castellano*, 119 N.M. at 150, 889 P.2d at 185. We look at such factors as the nature of the misconduct and patterns of behavior. *See id.*

{27} At the time we addressed the original misconduct involving Ms. Spilsbury's DUI case, we agreed that the stipulated dis-

ciplinary measures for Respondent's violations of the Code of Judicial Conduct were appropriate, including publication of a formal reprimand in the *Bar Bulletin*, six months of supervised probation and formal mentorship, and reimbursement of six hundred dollars to the Judicial Standards Commission for costs and expenses incurred in the original matter. However, given the recurring misconduct and that later misconduct includes the inexcusable use of cocaine, we are forced to take the most stringent measure available to us.

{28} Respondent's use of illegal drugs simply cannot be tolerated. His actions are a direct threat to the integrity and independence of the judiciary, to the judiciary's commitment to the law, and to the public trust. Although Respondent may, and we sincerely hope that he does, address whatever addictions may haunt him, we cannot pretend that Respondent would ever be able to restore the public trust essential to serving as a judge.

{29} Moreover, we cannot allow an individual who would flout the law himself to continue to serve as a judge and to have power over members of his community, including having access to confidential information necessary for determinations on issuing warrants, as well as having the power to impose sentences upon other citizens for violations of the law that may be lesser in degree than his own. We cannot allow a situation to continue that leaves one questioning what interest Respondent is serving. To do so would make a mockery of the judiciary and of justice itself. Respondent's additional pattern of misconduct regarding Ms. Spilsbury buttresses what would already have been the inevitable result of his illegal drug use. That is, we conclude that removal from judicial office is the only appropriate remedy.

{30} We therefore grant the Commission's petition for removal and order that Respondent be, and hereby is, permanently removed from judicial office pursuant to Article VI, Section 32 of the New Mexico Constitution. He shall never again hold, become a candidate for, or be permitted to accept appointment to any judicial office in the future, nor be permitted to seek, accept appointment to, or serve *pro tempore* for any judicial office. *See In re Romero*, 100 N.M. at 183, 668 P.2d

at 299 ("Previous acts of misconduct on the part of a judge or justice, committed in his official capacity as a judge or justice during a prior term of judicial office, follow the judge to any subsequent judicial office."). He shall pay the Commission's costs and expenses in the amount set forth in a certified memorandum of costs.

{31} **IT IS SO ORDERED.**

## APPENDIX

### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

NO. 04–8200

### IN THE MATTER OF REPORTING JUDICIAL MISCONDUCT INVOLVING UNLAWFUL DRUGS

### ORDER

WHEREAS, public confidence in the integrity and impartiality of the judiciary depends on a judge's respect for and compliance with the law *at all times*. *See* Rule 21–200 NMRA 2004. Therefore, any incumbent judge who illegally sells, purchases, possesses, or uses drugs or any substance considered unlawful under the provisions of the Controlled Substances Act, shall be subject to among other things, discipline under the Code of Judicial Conduct;

WHEREAS, Rule 21–300(D)(1) NMRA 2004 provides that "[a] judge having knowledge that another judge has committed a violation of this Code [of Judicial Conduct] that raises a substantial question as to the other judge's fitness for office shall inform the appropriate authority." Inaction may be tantamount to encouraging or empowering illegal conduct by judges thus eroding public confidence in the orderly administration of justice. Therefore, this order is intended to further clarify the above-referenced reporting requirement as it relates to misconduct involving unlawful drugs, because such misconduct directly reflects on the judge's fitness for office and requires investigation.

### 1. Reporting to the Judicial Standards Commission

Any judge, employee of the judiciary, or lawyer, who has specific objective and articulable facts and/or reasonable inferences that can be drawn from those facts, that a judge has engaged in the above-described misconduct, shall report those facts to the Judicial Standards Commission. Reports of such misconduct should include the following information:

A. Name of person filing the report;

B. Address and telephone number where the person may be contacted;

C. A detailed description of the alleged misconduct;

D. Dates of the alleged misconduct; and

E. Any supporting evidence or material that may be available to the reporting person.

The Judicial Standards Commission shall review and evaluate reports of such misconduct to determine if the report warrants further review or investigation. Pursuant to Judicial Standards Commission Rule 8 NMRA 2004, the Commission may require a judge under investigation to submit to drug testing in the manner set forth in State Personnel Board rules and regulations 1.7.8.12 and 1.7.8.13 NMAC 2004. Upon notification to the Supreme Court by the Judicial Standards Commission that the information reported warrants further review or investigation, an incumbent judge under investigation shall be placed on paid administrative leave pending completion of the investigation for a period not to exceed 90 work days unless otherwise ordered by the Supreme Court.

### 2. Reporting to the Lawyer Assistance Committee

The Supreme Court encourages any judge, employee of the judiciary, or lawyer who has a good faith basis to believe a judge is engaged in the above-described misconduct, but does not have specific objective and articulable facts regarding such conduct, to report such belief to the Lawyer Assistance Committee hotline. The suggested reporting is to encourage members of the judiciary to seek appropriate help for alcohol and/or substance abuse problems.

IT IS SO ORDERED.

Done in Santa Fe, New Mexico, this 16th day of June, 2004.

/s/ _____
Chief Justice Petra Jimenez Maes

/s/ _____
Justice Pamela B. Minzner

/s/ _____
Justice Patricio M. Serna

/s/_____
Justice Richard C. Bosson

/s/ W6D
Justice Edward L. Chávez