IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-026

Filing Date: June 13, 2013

Docket No. 34,097

INQUIRY CONCERNING A JUDGE
NO. 2012-100

IN THE MATTER OF HON. JAMES NARANJO,
Magistrate Judge, County of Socorro, New Mexico

Randall D. Roybal
Deborah L. Borio
Albuquerque, NM

for Judicial Standards Commission

Deschamps Law Firm, L.L.C.
Lee Deschamps
Socorro, NM

for Respondent

OPINION AND PUBLIC CENSURE

DANIELS, Justice.

{1}     This matter came before us on a petition to accept the stipulated agreement and consent to discipline between the Judicial Standards Commission and Respondent, the Honorable James Naranjo, a magistrate judge in Socorro, New Mexico. We issued an order granting the petition and imposing a ninety-day suspension with sixty days deferred, subject to the conditions set forth below. We now file this Opinion as a public censure under Rule 17-206(D) NMRA for publication in *New Mexico Appellate Reports* and in the *New Mexico Bar Bulletin*.

INTRODUCTION

{2}     Article VI, Section 32 of the New Mexico Constitution, which created the Judicial Standards Commission, provides that "any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office." That constitutional provision vests this Court with the ultimate responsibility of reviewing recommendations of the

1

Commission, determining whether a judge has committed willful misconduct, and imposing discipline that we find "just and proper."

**{3}** Pursuant to this Court's responsibility under Article VI, Section 3 of the New Mexico Constitution to exercise "superintending control over all inferior courts," we have promulgated a Code of Judicial Conduct, Rules 21-100 to -406 NMRA, that "establishes standards for the ethical conduct of judges and judicial candidates" requiring that judges "aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence." *Id.* pmbl. (2)-(3). While violations of Code provisions are not automatic grounds for judicial discipline, they provide "some proof of what constitutes appropriate judicial conduct." *In re Martinez*, 99 N.M. 198, 204, 656 P.2d 861, 867 (1982) (ordering suspension of a judge for willful misconduct in office).

**{4}** The Commission and Respondent have stipulated to the following facts. Respondent's stepson, Albert Hernandez, was a party in a child-support enforcement proceeding assigned to Seventh Judicial District Court Judge Matthew Reynolds. In August 2012, after Mr. Hernandez was jailed for nonpayment of support, Respondent, who had no official role in the case, placed a telephone call to Judge Reynolds, stating that Mr. Hernandez was not a flight risk and requesting that Judge Reynolds reduce Mr. Hernandez's bond or let him out of jail. As a result of the ex parte communication from Respondent, Judge Reynolds recused himself from Mr. Hernandez's case.

**{5}** Upon learning of the incident, the Commission initiated a preliminary investigation and requested a written explanation from Respondent for the phone call. Respondent explained in a letter that he placed the call "to advise Judge Reynolds that Albert Hernandez was not a flight risk and that [Respondent] would personally make sure he made his court date." Respondent also stated that he recognized that his phone call created an appearance of impropriety and promised to comply with any remedial action taken by the Commission.

**{6}** After receiving Respondent's letter, the Commission filed a notice of formal proceedings against Respondent, alleging in three counts that the phone call to Judge Reynolds was (1) an ex parte communication in Mr. Hernandez's child-support enforcement case, (2) an abuse of the prestige of Respondent's judicial office by attempting to gain favorable treatment for Mr. Hernandez, and (3) an abuse of the prestige of Respondent's judicial office by vouching for the character of Mr. Hernandez. The Commission also alleged that each of the three counts violated specific provisions of the Code of Judicial Conduct and constituted willful misconduct in office.

**{7}** Respondent obtained counsel and answered the Commission's notice, admitting to the conduct and the violations alleged by the Commission. He and the Commission then entered into the stipulation agreement and consent to discipline (Agreement) in which Respondent acknowledged that the telephone call to Judge Reynolds amounted to willful misconduct and violated Rules 21-101 (requiring compliance with the law), 21-102 (promoting confidence in the judiciary), 21-103 (avoiding abuse of the prestige of judicial

2

office), 21-204(B)-(C) (avoiding external influences on judicial conduct), 21-206(A) (ensuring the right to be heard), 21-209(A) (avoiding ex parte communications), 21-210(A) (prohibiting statements on pending and impending cases), and 21-303 (prohibiting service as a character witness). Respondent also agreed that his misconduct caused Judge Reynolds to disqualify himself from Mr. Hernandez's case.

**{8}** As stipulated discipline, Respondent agreed to (1) enroll in and successfully complete, at his own expense, the National Judicial College's online course, *Ethics and Judging: Reaching Higher Ground*, (2) receive a public censure, to be published in the *New Mexico Bar Bulletin*, (3) undergo formal mentorship with supervised probation for the remainder of his term in office, and (4) accept a suspension without pay for ninety days, with sixty days deferred on the condition that he successfully complete his probation.

**{9}** The Commission petitioned this Court for acceptance of the Agreement. We granted the petition and issued our order accepting the terms of the Agreement but conditioning the deferral of sixty days of Respondent's ninety-day suspension on his successful compliance with *all* of the terms of the Agreement, not just with the terms of his probation. *See* Rule 27-401(A)(3) NMRA ("The Supreme Court, in its discretion and under such conditions as it may specify, may . . . impose the discipline recommended by the commission or any other greater or lesser discipline that it deems appropriate under the circumstances . . . ."). Publication of this Opinion constitutes the public censure component of Respondent's discipline.

**DISCUSSION**

**A. Respondent's Ex Parte Efforts to Obtain Favorable Treatment of His Stepson Violated the Code of Judicial Conduct**

**{10}** Respondent's conscious act of placing an ex parte telephone call to Judge Reynolds on behalf of Respondent's stepson violated the following specific provisions of the Code of Judicial Conduct.

**1. External Influences on Judicial Conduct**

**{11}** Rule 21-204(C) provides that "[a] judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge," and Rule 21-204(B) provides that "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." The committee commentary to Rule 21-204 emphasizes that its provisions are aimed not only at actual improper influences on judicial conduct but also at the creation of appearances of impropriety: "Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences." *See* Arthur Garwin et al., *Annotated Model Code of Judicial Conduct* 122 (2d ed. 2011) ("Not only is it misconduct for a judge to be influenced in her own decision making to advance the judge's private

3

interests or the interests of friends or family members, it is equally improper and a violation of this canon for a judge to attempt to influence others in the decision-making process to advance these relationships and interests."). Respondent's efforts to influence the assigned judge on behalf of his stepson therefore violated Rule 21-204(B) and (C).

**{12}** All judges must be acutely aware of the harm done to the integrity and reputation of the judiciary when a judge seeks preferential treatment for an acquaintance or relative. Our legal system is built on principles of fairness, justice, and equality, principles which are undermined when a judge attempts to obtain favorable judicial treatment for another. And when such an attempt is directed to another judge behind closed doors, the damage is magnified. It creates the misperception that our judicial system tolerates secret dealings and favoritism among those entrusted with the fair and impartial administration of justice.

**{13}** A citizen who is entrusted with the increased authority inherent in a judicial position also takes on special ethical obligations designed to ensure litigants and the public that judicial authority will not be abused. We have previously addressed the potential conflicts between a judge's personal relationships and the restrictions imposed by controlling standards of judicial ethics: "From the perspective of a parent, Respondent's attempts to assist his son during a time of trouble may be understandable. . . . Nevertheless, as a judge, Respondent is expected to regulate his behavior in a way that other parents are not." *In re Ramirez*, 2006-NMSC-021, ¶¶ 4, 6-7, 15, 139 N.M. 529, 135 P.3d 230 (per curiam) (disciplining a judge who showed his court identification and verbally identified himself to police officers who were issuing citations to his son and his son's friends, used a volunteer bailiff to assist them in responding to their citations, and spoke to a judge assigned to the cases).

### 2. Ex Parte Communication

**{14}** Rule 21-209(A) prohibits a judge from initiating, permitting, or engaging in ex parte communications, and Rule 21-206(A) prohibits a judge from denying a party the right to be heard according to law. Judge Reynolds was the duly assigned presiding judge in the case involving Respondent's stepson and was obligated by law to avoid any participation in ex parte communications in that proceeding. *See In re Larsen*, 616 A.2d 529, 559 (Pa. 1992) (per curiam) (holding that the presiding judge had "an obligation not to consider *ex parte* communications" from Justice Larsen). Judge Reynolds also had a duty to ensure that all of the parties in Mr. Hernandez's case had the right to be heard. Judge Reynolds appropriately disqualified himself when he apparently recognized that his impartiality in Mr. Hernandez's child-support enforcement proceeding might reasonably be questioned after the private conversation initiated by Respondent. *See* Rule 21-211 ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . .").

**{15}** Even though the provisions of Rules 21-209(A) and 21-206(A) technically apply directly to the assigned judge, they are important in understanding why Respondent's call

to Judge Reynolds constituted willful misconduct in office. "Ex parte communications are prohibited generally because they undermine the adversary system, threaten the fairness of a proceeding, and create an appearance of bias and impartiality." Garwin et al., *supra*, at 176 (citing *In re Marek*, 609 N.E.2d 419, 420 (Ind. 1993)); *see also* Rule 21-206 committee commentary ¶ 1 ("The right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed."). And when the improper ex parte communication is initiated by a judge, whether presiding or otherwise, the effects are even more severe, violating the principles that lie at the foundation of public confidence in an impartial judiciary. *See* Rule 21-102 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety.").

**{16}** This case is no exception. Respondent should have been aware of the pernicious effects that his ex parte communication to Judge Reynolds could have on the lawful conduct of his stepson's case and on the public perception of the judiciary. The matter of Mr. Hernandez's bond or release from jail was for Judge Reynolds to decide, with public input from the parties and others as permitted by law and court rules. Respondent simply had no place communicating with Judge Reynolds about Mr. Hernandez's case, particularly in a manner that deprived the parties of notice and an opportunity to respond to Respondent's ex parte guarantee that Mr. Hernandez was not a flight risk. The call to Judge Reynolds not only created the appearance of impropriety, it was clearly prohibited by Rule 21-102.

### 3.      Abusing the Prestige of Judicial Office

**{17}** The ex parte communication also violated Rule 21-103, which provides, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." The committee commentary is clear that the rule encompasses precisely the type of conduct at issue in this matter: "It is improper for a judge to use or attempt to use his or her position to gain personal advantage or deferential treatment of any kind." *Id.* committee commentary ¶ 1. Respondent's judge-to-judge communication attempting to gain favorable treatment for his stepson was a clear violation of this rule and was willful misconduct in office. *See, e.g.*, *In re Garza*, 2007-NMSC-028, ¶¶ 2, 4-5, 19, 141 N.M. 831, 161 P.3d 876 (per curiam) (holding that a magistrate judge abused the prestige of his judicial office by attempting to influence other magistrate judges who were presiding over an acquaintance's DWI case); *In re Maestas*, No. 27,348, ¶¶ 3, 5 (N.M. Sup. Ct. March 5, 2002) (holding that a judge who attempted to obtain favored treatment from law enforcement officers for the judge's friend committed willful misconduct in office); *see also* Garwin et al., *supra*, at 78 ("Rule [21-103] prohibits a judge from lending the prestige of judicial office to advance the personal or economic interests of others. To do so, or to convey that anyone is in a special position of influence, is to prostitute the office.").

### 4.      Vouching for Character of a Person in a Legal Proceeding

**{18}** Rule 21-303 provides, "A judge shall not testify as a character witness in a judicial, administrative, or other adjudicatory proceeding or otherwise vouch for the character of a person in a legal proceeding, except when duly summoned." With the adoption of this rule in January 2012, we expanded the former proscription against judicial character vouching, which previously consisted only of a textual ban on formal testimony: "A judge shall not testify voluntarily as a character witness." Rule 21-200(B) (1995). The current rule is taken from the American Bar Association's Model Code of Judicial Conduct, which was amended in 2007 to include the language "or otherwise vouch for the character of a person in a legal proceeding." *See* Model Code of Judicial Conduct Canon 3, R. 3.3 (2007), *available at* http://www.americanbar.org/groups/professional_responsibility/resources/judicial_ethics_regulation/mcjc.html (follow hyperlinks to "Model Code of Judicial Conduct, as revised February 2007," and to "Text Comparison—2007 Model Code to 1990 Code"). This language was added "in recognition of the fact that under oath is not the only mode in which judges might abuse the prestige of office when the character of a person is in issue in a legal proceeding." Garwin et al., *supra*, at 352-53 (citing Charles G. Geyh & W. William Hodes, *Reporters' Notes to the Model Code of Judicial Conduct* 60-61 (2009)).

**{19}** Both the letter and the spirit of Rule 21-303 prohibit the kind of assurances Respondent made to Judge Reynolds that he did not believe Mr. Hernandez would be a flight risk. Respondent candidly admitted that he offered this information "to advise Judge Reynolds that Albert Hernandez was not a flight risk." Clearly, Respondent was vouching for the trustworthiness of his stepson in an attempt to influence Judge Reynolds's judicial determination of the conditions of Mr. Hernandez's potential release from jail. *See* Rule 5-401(C)(3)(a)-(b) NMRA (providing that a factor to be considered in determining conditions of release is "the history and characteristics of the person, including . . . the person's character and . . . the person's family ties"). Respondent's vouching for his stepson as not being a flight risk in an ex parte conversation with the duly assigned judge was even more problematical than if Respondent violated Rule 21-303 by offering sworn character testimony in a public adversary proceeding because the opposing party in a hearing at least would have known of the vouching and been able to respond with cross-examination and countering testimony.

## 5. Making a Statement Likely to Interfere with a Fair Hearing

**{20}** The phone call also violated Rule 21-210(A), which provides, "A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court, or make any nonpublic statement that might substantially interfere with a fair trial or hearing." Because Respondent's nonpublic statements deprived any adverse party of an opportunity to respond and because the nonpublic statements were made from one judge to another, the statements had the potential not only to "substantially interfere" with the lawful resolution of the release issue in Mr. Hernandez's case but to be outcome determinative.

## B. Respondent's Conduct and Code of Judicial Conduct Violations Constituted

6

**Willful Misconduct in Office**

**{21}**    By both the terms of the stipulation offered by the Commission and Respondent and under our own caselaw, Respondent's conduct and its resulting Code violations constituted willful misconduct in office. *See In re Gentry*, No. 28,986 ¶¶ 4, 6 (N.M. Sup. Ct. July 29, 2005) (per curiam) (holding that a metropolitan judge who initiated ex parte communications with a special commissioner and a district court judge to influence a child placement in a case involving a family member committed willful misconduct in office); *cf. In re Garza*, 2007-NMSC-028, ¶¶ 21, 23 (holding that a magistrate judge who contacted another magistrate judge in seeking preferential treatment for an acquaintance committed willful misconduct in office). Respondent consciously made an impermissible judge-to-judge ex parte telephone call to vouch for the character of and influence the assigned judge's official decision regarding Respondent's stepson and thereby committed willful misconduct in office.

**{22}**    We therefore accept the stipulation of the parties and issue this Opinion and public censure, both as an assurance to those we serve and as a reminder to all members of the New Mexico judiciary that we cannot permit any behavior on the part of any of our judges that creates either the reality or an appearance of judicial favoritism.

**CONCLUSION**

**{23}**    For the foregoing reasons, we publically censure Respondent for his misconduct and confirm our previous order accepting the stipulation of the parties and imposing the disciplinary sanctions summarized in this Opinion.

**{24}    IT IS SO ORDERED.**

 

_____
                     **CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *In re Naranjo*, No. 34,097**

**JUDGES**
Code of Judicial Conduct
Propriety of Conduct