This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: December 13, 2021**

**No. S-1-SC-38714**

**INQUIRY CONCERNING A JUDGE**
**JSC Inquiry No. 2020-038**

**IN THE MATTER OF**
**HON. GEORGE ANAYA, JR.**
**Santa Fe County Magistrate Court**

**PUBLIC CENSURE**

**Per Curiam.**

**{1}** This matter came before this Court on a petition to accept the stipulated agreement and consent to discipline between the Judicial Standards Commission (the Commission) and Respondent, Honorable George Anaya, Jr., a Santa Fe County Magistrate Court Judge. In the stipulation agreement, Respondent acknowledged that the Commission had sufficient evidence to establish willful misconduct in office. We granted the Petition and accepted the terms of the *Stipulation Agreement and Consent to Discipline* (Stipulation). We now publish this Public Censure in the New Mexico *Bar Bulletin* in accordance with our Order, the Stipulation and JSC Rule 36(C)(5) NMRA 2020.

**BACKGROUND**

**{2}** The facts leading to discipline in this case, as set out in the Stipulation, are as follows. On Friday, April 3, 2020, Judge Anaya received an ex parte phone call on his personal cell phone from Fernando Gallegos, the father of an alleged violent offender, Danielle Gallegos, who was charged with multiple violent felony offenses and arrested on Friday, April 3, 2020. On Saturday, April 4, 2020, Judge Anaya received and engaged in a second ex parte phone call on his personal cell phone, again from the father of Danielle Gallegos, the alleged violent offender. After receiving the second ex parte phone call, Judge Anaya signed an Order of Release, which resulted in Danielle Gallegos' release on Saturday, April 4, 2020.

**{3}** Judge Anaya's weekend release of Danielle Gallegos disregarded a well-established Santa Fe County Magistrate Court protocol regarding the weekend release of alleged violent offenders. The Santa Fe County Magistrate Court enacted a protocol

which instructs the judge on call over the weekend not to release alleged violent offenders until the next business day to allow the District Attorney's office an opportunity to review the charges and determine if a motion for pre-trial detention is appropriate in accordance with Rule 6-409 NMRA. Judge Anaya had never violated the Santa Fe County Magistrate Court protocol before receiving the two ex parte phone calls from Fernando Gallegos. After the Commission completed its investigation into this matter, which included an informal conference with the Respondent to discuss the allegations prior to the issuance of charges, Respondent stipulated that the evidence was sufficient to prove he had violated the following Rules of the Code of Judicial Conduct and committed willful misconduct in office:

- Rule 21-101 (requiring compliance with the law);
- Rule 21-102 (promoting confidence in the judiciary);
- Rules 21-204(B)-(C) (avoiding external influences on judicial conduct);
- Rule 21-205; (cooperation with others in administration of court business);
- Rule 21-206(A) (ensuring the right to be heard);
- Rules 21-209(A)–(B) (avoiding ex parte communications).

**DISCUSSION**

**{4}** Article VI, Section 32 of the New Mexico Constitution provides that "any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office." We have defined willful misconduct in office as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly, and, generally in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Locatelli*, 2007-NMSC-029, ¶ 8, 141 N.M. 755. In imposing discipline, we must be satisfied that willful misconduct is proven by clear and convincing evidence. Id. ¶ 7. "There need not be clear and convincing evidence to support each and every [allegation or fact]. Rather, we must be satisfied by clear and convincing evidence that there is willful judicial misconduct which merits discipline." *In re Castellano*, 1995-NMSC-007, ¶ 37, 119 N.M. 140; *see also In the Matter of Robert Merle Schwartz*, 2011-NMSC-019, ¶ 13, 149 N.M. 721. In this case, Judge Anaya acknowledged and stipulated the Commission would have been able to establish by clear and convincing evidence that he had committed willful misconduct in office. While violations of the Code of Judicial Conduct do not control the imposition of discipline, they do provide evidence of misconduct. Id. ¶ 8.

**{5}** Judge Anaya conceded that the Commission had sufficient clear and convincing evidence to establish that he violated Rules 21-101, 21-102, 21-204(B)-(C), 21-205, 21-206(A) and 21-209(A)-(B) NMRA. Rules 21-101 and 21-102 of the Code of Judicial Conduct codify the overarching principles that govern a Judge's conduct. Rule 21-101 requires a judge to "respect and comply with the law, including the Code of Judicial Conduct." Rule 21-102 states, "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." The Committee Commentary on these rules explains that public confidence is eroded in the judiciary when a judge engages in improper conduct and conduct that has the appearance of

impropriety. Rule 21-102 NMRA, cmt. (1). "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated [the Code of Judicial Conduct] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Id. at (5).

**{6}** We agree that the stipulated factual findings support the conclusion that Respondent violated Rules 21-101 and 21-102 of the Code of Judicial Conduct. It is understandable that Respondent might receive an ex parte phone call from a litigant or the representative of a litigant from time to time. New Mexico is a sparsely populated state with many close-knit communities within its counties and judicial districts. New Mexico judges face additional challenges when working in these close-knit communities, including in avoiding individuals who attempt ex parte communications.

**{7}** It is especially important for judges in these close-knit communities to maintain the independence and integrity of the judiciary to preserve the prestige of the office and the public's confidence in the judiciary *See In re Rael*, No. 33,633 (N.M. Sup. Ct. October 3, 2012) (non-precedential). If a judge receives an attempted ex parte communication, it is the judge's responsibility to not allow or engage in such communications. The judge should interrupt to advise the person that such communications are prohibited and redirect the person to pursue their matter through proper channels, such as through the filing of motions. The judge must also promptly notify all parties of the communication. By adhering to this requirement, the judge may effectively avoid any appearances of impropriety, as well as actual instances of impropriety.

**{8}** In this matter, Respondent received the first ex parte phone call on his personal cell phone on Friday, April 3, 2020. Respondent should have interrupted the caller, should have told the caller it was improper to call the judge about this matter, and then should have redirected the caller to consult with an attorney and/or to have the defendant file a motion. Essentially, once it was apparent the call concerned Respondent's upcoming review of Danielle Gallegos' conditions of release, after being charged and arrested on serious felony charges, Respondent should have ended the call, and then promptly notified the District Attorney's Office and the defendant of the ex parte phone call and what was discussed.

**{9}** The next day, Saturday, April 4, 2020, Respondent received and engaged in a second ex parte phone call on his personal cell phone from the defendant's father, Fernando Gallegos--the same individual that called him the night before. Upon recognizing the telephone number, Respondent should have ignored the second phone call. When Respondent answered the call, however, he should have advised Mr. Gallegos that he could not speak about the case without the prosecutor present, and then should have ended the phone call and notified the prosecutor of it. Respondent should not have taken any judicial action in Danielle Gallegos' pending matter without notifying the prosecutor of the two separate ex parte phone calls and affording the prosecutor the right to be heard.

**{10}** After the second ex parte phone conversation with the defendant's father, Respondent entered an order setting conditions of release for Danielle Gallegos, pending her trial for violent offenses. Respondent's issuance of the release order following the ex parte communications from defendant's father violated an established Santa Fe County Magistrate Court protocol requiring the judge on call for weekend arrest determinations to <u>not</u> set conditions of release for alleged violent offenders until the next business day. The specific stated purpose of the protocol is to afford the District Attorney's Office an opportunity to review the charges and determine if a motion for pretrial detention is needed in the case.

**{11}** Respondent had never before violated his court's release protocol. Respondent's action of releasing an alleged violent offender against a well-established Santa Fe County Magistrate Court protocol after receiving two separate ex parte phone calls on his personal cell phone from the alleged violent offender's father was improper for a number of reasons. The Respondent's actions deprived the prosecutor of his right to notice and to be heard. He violated his own court's established protocol concerning weekend arrests based upon these two ex parte calls. Respondent's actions also created the improper appearance that Respondent abandoned his role as a neutral and detached, independent, fair, and impartial fact finder. Respondent's conduct furthermore undermined the public's confidence in our state judiciary by compromising the fundamental integrity, impartiality and independence upon which our judicial system is based. *See generally In re Griego*, 2008-NMSC-020, ¶ 19, 143 N.M. 698.

**{12}** The Rule of Law in our society depends critically upon the public's confidence in our courts, especially concerning the independence and integrity of the judges elected to serve in such high positions of responsibility and authority. Actual impropriety by a judge, or even the appearance of such, not only undermines the public's trust and confidence in that judge but also in the very institutions upon which society is based. To maintain that confidence and in consideration of the broad authority of judicial power, the "conduct prescribed for judges and justices is more stringent than conduct generally imposed on other public officials." *In the Matter of Robert Merle Schwartz*, 2011-NMSC-019, ¶ 18 (*Citing to In re Romero*, 1983-NMSC-054, ¶ 14, 100 N.M. 180, 668 P.2d 296 (1983)).

**{13}** Rule 21-204(B) provides that "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." Rule 21-204(C) provides that "a judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge." Committee commentary to Rule 21-204 emphasizes that its provisions are aimed not only at actual improper influences on judicial conduct but also at the creation of appearances of impropriety: "Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences." *See In re Naranjo*, 2013-NMSC-026, ¶ 11 (*Citing to* Arthur Garwin et al., *Annotated Model Code of Judicial Conduct*, 122 (2d ed. 2011)). Violating a well-established court protocol by releasing an alleged violent offender over the weekend after receiving two separate ex parte phone calls from the alleged violent offender's father violated Rules 21-204(B) and (C).

**{14}** Rule 21-209(A) prohibits a judge from initiating, permitting, or engaging in ex parte communications. "Ex parte communications are prohibited generally because they undermine the adversary system, threaten the fairness of a proceeding, and create an appearance of bias and impartiality." *See In re Naranjo*, 2013-NMSC-026, ¶ 15; *see also* Rule 21-206 NMRA cmt. (1) ("[T]he right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed."). Engaging in ex parte communications and acting on those conversations robs the other parties to a case of their rights to be heard, and ultimately erodes the public confidence that the judge will afford them a fair hearing. Respondent prevented the District Attorney's Office from reviewing the matter and addressing issues relating to pretrial detention by releasing the alleged violent offender after communicating ex parte twice with the defendant's father, thereby depriving the state from being heard.

**{15}** Rule 21-206(A) requires a judge to "accord to every person who has a legal interest in a proceeding . . . the right to be heard according to law." The Santa Fe County Magistrate Court protocol regarding the release of alleged violent offenders arrested over the weekend is not a law, but it was purportedly designed, in part, to ensure the very thing that Judge Anaya deprived: depriving the state's attorney of the opportunity to review the case before releasing an alleged violent offender into the community. Respondent has an affirmative duty under Rule 21-205 to comply with all court rules and procedures. *See In re Barnhart*, No. 29,379 (N.M. Sup. Ct. October 19, 2005) (where Respondent photographed interior of Court in violation of courthouse rules and policies) (non-precedential). Court protocols are set in each court and are specific to each court to help ensure the proper administration of justice. Failing to abide by protocols, policies and/or rules set by a judge's court threatens to undermine the effective administration of justice in that court and could place the alleged victim(s), witness(es), or the community at risk of harm. Respondent's conduct violated the Code of Judicial Conduct and constitutes willful misconduct in office.

**{16}** Rule 21-209(B) outlines the procedure a judge should follow when presented with an ex parte communication, stating "[i]f a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Respondent failed to make any of the parties—neither the defendant nor the District Attorney--aware of his multiple ex parte communications prior to taking the action those communications sought to achieve: the release of the alleged violent offender from jail pending trial. Respondent's violation of Rules 21-209(A) and (B) of the Code of Judicial Conduct is clear. He permitted and engaged in two separate ex parte phone calls with a criminal defendant's father, released the defendant following those ex parte calls, and then failed to make the other party (the prosecution) aware of the ex parte phone calls. The result of Respondent's misconduct was the deprivation of the right to notice and an opportunity to be heard on this important matter.

**{17}** Under the terms of the stipulation offered by the Commission and Respondent, and considering our own case law, Respondent's conduct and violations of the Code of

Judicial Conduct constituted willful misconduct in office. *Naranjo*, 2013-NMSC-026 (holding a judge who engaged in ex parte communications committed willful misconduct); *see also Rael*, No. 33,633, dec. (holding a judge engaging in ex parte proceedings and taking action in the case based off the ex parte proceeding committed willful misconduct). Respondent knowingly permitted, engaged, and acted upon two separate ex parte communications with the father of an alleged violent offender arrested over a weekend, and in so doing, violated the established protocol of his own court, and then failed to notify the other party in the case (the District Attorney) of the ex parte communications and their substance. In so doing, we agree that Respondent's actions constitute willful misconduct in office.

**{18}** We therefore accept the stipulation agreement presented by the Commission and Respondent and issue this public censure to Respondent as an assurance to the public we serve and as a clear reminder to all judges under our supervisory authority that improper judicial behavior will not be tolerated. Furthermore, this censure affirms the steadfast commitments of our judiciary to all persons lawfully coming before our courts that they shall receive fair and impartial justice under the law.

**{19}** For the foregoing reasons, Respondent Hon. George A. Anaya, Jr. is hereby censured for his willful misconduct as set forth fully above and our previous order accepting the stipulation and consent to discipline is accepted, adopted, and confirmed.

**{20} IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**