2008-NMSC-020

181 P.3d 690

**In the Matter of J. Wayne GRIEGO, Metropolitan Court Judge, Bernalillo County, New Mexico.**

**No. 30,203.**

Supreme Court of New Mexico.

April 11, 2008.

James A. Noel, Elizabeth A. Garcia, Albuquerque, NM, for Judicial Standards Commission.

Timothy M. Padilla & Associates, P.C., Timothy M. Padilla, Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} Over a period of almost three years, Metropolitan Court Judge J. Wayne Griego engaged in conduct that betrayed the public trust and undermined the judiciary's integrity by bypassing evidentiary hearings and adjudicating tickets for family members and friends without state participation. When confronted with evidence of this conduct, Griego blamed his staff, an explanation that the New Mexico Judicial Standards Commission (the Commission) did not find credible. Under these circumstances, our constitutional duty demands that we remove Griego from the bench. N.M. Const., art. VI, § 32.

## I. BACKGROUND

{2} This is the second time Griego has appeared before this Court on a disciplinary matter. On February 6, 2007, this Court ordered Griego to pay a $500.00 fine, complete six months of supervised probation, and abide by all terms in his stipulated agreement with the Commission. In addition, this Court published a formal reprimand in the New Mexico State Bar Bulletin on June 25, 2007. In the first disciplinary matter, Griego instructed his secretary to use his file stamp to process his traffic docket in April 2005 on a day when he was unable to attend court. This date falls within the same time period as the current disciplinary matter. In that case, the Commission filed a notice of preliminary -inquiry in June 2005 and a notice of formal proceedings in September 2005. Griego continued to engage in the conduct at issue in these proceedings, even though he knew he was being investigated in a separate, although arguably related, matter.

{3} The facts are undisputed in the current proceedings. Griego was appointed to the metropolitan court bench in 2003 and was elected to the bench in November 2004. Between March 2004 and January 2007, Griego adjudicated well over twenty cases involving family members, friends, and family members of friends and staff, ex parte, without hearings or taking evidence. In one case, one of Griego's relatives was charged with resisting or obstructing a police officer. However, most of these cases involved routine traffic citations. Griego was not the scheduled judge for traffic arraignments when he adjudicated these cases. He usually adjudicated the cases before their scheduled arraignment dates, either deferring or continuing them for ninety days with the requirement that no further traffic violations occur within that time. In some cases, however, when the defendants had failed to appear before the assigned judge, he cancelled bench warrants and dismissed charges for failure to appear.

{4} Based on these facts, the Commission concluded that Griego violated the following provisions of the Code of Judicial Conduct, Rules 21–001 through 21–901 NMRA, and committed willful misconduct in office: Rule 21–100 (requiring a judge to uphold the integrity and independence of the judiciary); Rule 21–200 (requiring a judge to avoid impropriety and the appearance of impropriety in all activities); Rule 21–300 (requiring a judge to perform the duties of office impartially and diligently); and Rule 21–400 (requiring a judge to recuse when the judge's impartiality might reasonably be questioned).

{5} In its recommendations for discipline, the Commission stated that Griego "was not completely forthcoming in his testimony before the Commission. His testimony blaming [his secretary] for the handling of the traffic citations was not deemed credible by the Commission." The Commission then recommended the following discipline: (1) suspension without pay for ninety days; (2) before returning to the bench, submission of written policies and procedures for his office addressing the avoidance of future conflicts of interest, staff supervision, and staff training to both this Court and the Commission;

(3) publication of a formal written reprimand; and (4) payment of costs not to exceed $11,939.46. Under Rule 27–301 NMRA, the Commission filed a petition for discipline with this Court and Griego filed a response. This Court held oral argument in the matter and adopted the Commission's findings and conclusions, but for the reasons that follow, we rejected the recommendations for discipline and ordered that Griego be immediately removed from the bench.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ {6} Griego did not challenge the Commission's findings, conclusions, or recommendations, and requested that we adopt the Commission's recommendations for discipline. This Court may "accept, reject or modify any or all of the findings and conclusions of the commission," Rule 27–401(A)(1) NMRA, and we "are charged with independently evaluating the record for the presence or absence of clear and convincing evidence." *In re Castellano,* 119 N.M. 140, 149, 889 P.2d 175, 184 (1995) (per curiam). However, "we may give weight to the evidentiary findings of those who were able to judge credibility." *Id.* at 149–50, 889 P.2d at 184–85 (citation omitted); *see also In re Locatelli,* 2007–NMSC–029, ¶ 11, 141 N.M. 755, 161 P.3d 252 (per curiam) (citing *In re Bristol,* 2006–NMSC–041, ¶¶ 16–18, 140 N.M. 317, 142 P.3d 905 (per curiam) for the proposition "that in administrative disciplinary proceedings this Court defers to the fact finder on factual matters but reviews legal conclusions and recommendations for discipline de novo").

### B. FINDINGS AND CONCLUSIONS

■ {7} This case comes before us on stipulated facts and unchallenged findings that are binding on the parties on appeal. *See Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). While we give deference to the Commission's factual findings, we review conclusions of law and recommendations for discipline de novo. *See In re Bristol,* 2006–NMSC–041, ¶¶ 16–18, 140 N.M. 317, 142 P.3d 905. In reviewing the conclusions of law, we determine whether the law was correctly applied to the facts. *See*

*Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991) (citation omitted) ("When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary.").

■ {8} We agree with the Commission that by adjudicating traffic cases involving family members, friends, and family members of friends and staff, outside the presence of a representative of the state, and by involving his staff in this conduct, Griego committed willful misconduct in office. Following is a discussion of each provision of the Code of Judicial Conduct that Griego violated.

■ {9} Rule 21–400 addresses disqualification and recusal. Rule 21–400(A) requires recusal in cases in which the judge's impartiality might reasonably be questioned. Rules 21–400(A)(1) and (5) required Griego to recuse himself in cases involving family members, friends, and family members of his staff. He violated these rules when he did not do so.

{10} Rule 21–300 addresses a judge's judicial responsibilities. When a judge is adjudicating cases, Rule 21–300(B)(7) requires that, except in specific situations, "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Griego violated this rule by adjudicating traffic cases outside the presence of a representative of the state. In the context of office management, Rule 21–300(C)(2) requires a judge to require his staff "to observe the standards of confidentiality, fidelity and diligence that apply to the judge and to refrain from manifesting bias and prejudice in the performance of their official duties." By either instructing or permitting his staff to process cases outside the courtroom and the presence of the state, Griego failed to comply with this rule.

{11} Rule 21–200 requires judges to avoid impropriety and the appearance of impropriety in all activities. Rule 21–200(A) states that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," and Rule 21–200(B) provides that "[a] judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment." When a judge unfairly adjudicates the cases of family members and friends, the public loses confidence in the judiciary.

{12} Finally, Rule 21–100 requires that "[a] judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Griego's conduct in this case threatens the integrity and independence of the judiciary by making a mockery of justice.

## C. RECOMMENDATIONS FOR DISCIPLINE

{13} We agree with the Commission that the conclusions of law are supported by the findings of fact. Regarding the recommendations for discipline, Rule 27–401(A)(3) NMRA provides that this Court may impose either the recommended discipline or any other greater or lesser discipline we deem to be appropriate. In this case, we believe the findings and conclusions require Griego's removal from the bench. Unlike disciplinary actions involving attorneys, which are guided by the ABA *Standards for Imposing Lawyer Sanctions* (1991) (looked to for guidance by this Court in *In re Key*, 2005–NMSC–014, ¶ 5, 137 N.M. 517, 113 P.3d 340) (per curiam), disciplinary proceedings for judges have no analogous standards for imposing sanctions on judges. This Court has stated, however, that in imposing discipline on judges, this Court looks "at such factors as the nature of the misconduct and patterns of behavior." *In re Garza*, 2007–NMSC–028, ¶ 26, 141 N.M. 831, 161 P.3d 876 (per curiam). We also note that the *Model Code of Judicial Conduct* states that when imposing discipline on judges, courts should consider "factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others." *Id.*, Scope ¶ 6 (2007).

{14} In making its recommendations for discipline, the Commission explained that it had weighed Griego's misconduct with factors it determined mitigated against harsher discipline. In examining the misconduct, the Commission first stated that the conduct was "very serious," "repetitive and for the benefit of Judge Griego's friends and family and for the benefit of family members of his staff," and was conduct that "undermines public confidence in the fairness and integrity of New Mexico's judiciary." Second, the Commission pointed out that Griego had previously been reprimanded by this Court. Finally, the Commission found that Griego was "not completely forthcoming" and that his testimony blaming his staff "was not deemed credible."

{15} The Commission then determined that there were mitigating factors in this case: namely, that "the traffic citations involved were comparatively minor violations of law which carried minimal punishments," and that "[i]n many cases, it appears that the defendants received dispositions from Judge Griego which were consistent with the dispositions received by other defendants." The Commission also stated that "it was not shown by clear and convincing evidence that Judge Griego obtained any specific personal benefit" from his actions, and that he had expressed that he accepted responsibility for his actions. After weighing the misconduct against what the Commission believed were mitigating factors, the Commission recommended a ninety day suspension without pay and the payment of costs.

{16} We agree with the Commission that the transgression in this case is very serious. Griego's willful misconduct, exemplified by his numerous violations of the Code of Judicial Conduct, demonstrates a lack of respect for the judicial system. We do not agree, however, that the "comparatively minor" nature of the offenses should

be considered a mitigating factor when imposing discipline. Instead, we agree with the Pennsylvania Court of Judicial Discipline that "however common and routine the practice of tampering with the disposition of Motor Vehicle Code violations including traffic tickets may have been in earlier eras, the practice is in the present time repellent to principles of equal justice under the law for all citizens." *In re Kelly*, 757 A.2d 456, 461 (Pa.Ct.Jud.Disc.2000) (per curiam). Moreover, as the Maryland Court of Appeals, quoting the Maryland Commission on Judicial Disabilities, has observed, " '[i]f we give credence to the notion that because an individual parking ticket is of minor importance and that it is somehow permissible for a judge hearing a parking ticket case to engage in personal or political favoritism, then we condemn the whole judicial system to suspected corruption.' " *In re Diener*, 268 Md. 659, 304 A.2d 587, 599 (1973).

{17} The metropolitan court handles well over 100,000 cases per year. As a result, the public has a significant amount of contact with metropolitan court judges and staff. Indeed, one witness in this case characterized the metropolitan court as the "people's court," and another testified that adjudicating traffic cases is a major part of a metropolitan court judge's duties. A judge appointed to the metropolitan court should take the adjudication of traffic cases seriously. It is also significant that a metropolitan court judge must be a licensed attorney. As such, the judge has had the benefit of a law school education and has been required to pass a rigorous bar exam, including an exam exclusively pertaining to the Code of Professional Conduct. *Ex parte* communications are prohibited in the Code, Rule 16–305(B) NMRA, an ethical consideration of which Griego must have been aware prior to assuming his role as a judge. In our view, Griego's conduct demonstrates a lack of commitment to his judicial duties and has an immeasurable impact on the public's confidence in the judicial system.

{18} When a judge's conduct demonstrates lack of respect for and commitment to the law, "removal from judicial office is the only appropriate remedy." *See In re Garza*, 2007–NMSC–028, ¶¶ 29, 28, 141 N.M. 831, 161 P.3d 876 (observing that Garza's "pattern of misconduct … [and] illegal drug use" were a "direct threat to the integrity and independence of the judiciary, to the judiciary's commitment to the law, and to the public trust"). In this case, the pattern of misconduct emphasizes Griego's lack of commitment to the law because it shows that the misconduct was not an isolated incident, but routine practice. Of even greater significance is the fact that during the period of time when Griego was fixing tickets, March 2004 to January 2007, he knew he was under investigation in a separate disciplinary matter involving the improper delegation of his judicial duties. Even though Griego was under investigation by the Commission, he continued to instruct his staff to process traffic cases for which he was not the assigned judge, for family and friends, and without state participation. This conduct continued until one month before this Court entered a disciplinary order in the matter. There can be no question that such conduct is a direct threat to the integrity, and thus the independence, of the judiciary. Therefore, we are not persuaded that either the nature of the offenses or the fact that the penalties imposed were "in many cases" consistent with those given in similar cases to be mitigating factors.

{19} Griego's conduct demonstrates a lack of respect for the principles of fairness on which our judicial system is constructed. "Procedural due process requires a fair and impartial hearing before a trier of fact who is disinterested and free from any form of bias or predisposition regarding the outcome of the case." *See N.M. Bd. of Veterinary Med. v. Riegger*, 2007–NMSC–044, ¶ 27, 142 N.M. 248, 164 P.3d 947 (internal quotation marks and citation omitted); U.S. Const. amend. XIV; N.M. Const. art. II, § 18. "Equal protection, both federal and state, guarantees that the government will treat individuals similarly situated in an equal manner." *Breen v. Carlsbad Mun. Sch.*, 2005–NMSC–028, ¶ 7, 138 N.M. 331, 120 P.3d 413; U.S. Const. amend. XIV; N.M. Const. art. II, § 18. These are bedrock principles of law that judges are sworn to uphold.

*See* N.M. Const. art. XX, § 1. In this case, Griego's conduct undermined the public's expectation that everyone appearing in metropolitan court will receive a fair and impartial hearing. Whether or not Griego imposed penalties on his friends and family that were consistent with those given to others appearing in metropolitan court does not negate the fact that the process afforded to his friends and family was different from that given to other members of the public. This difference in the process created the perception that he was bestowing favors, rather than deciding cases fairly and impartially.

{20} Finally, although the Commission stated that "in his statement to the Commission following the finding of misconduct, Judge Griego expressed that he accepted responsibility for his actions, that he had a desire to correct any past problems, and that he would endeavor to abide by the Code of Judicial Conduct in the future," we note that Griego made a similar statement in his earlier disciplinary proceedings. This statement is also undermined by the Commission's finding that Griego's testimony was not credible.

{21} Under these circumstances, noting that the Commission found that Griego's testimony was not credible, we cannot allow Griego to preside over cases in which he is charged with weighing evidence and determining the credibility of others. *See In re Garza*, 2007–NMSC–028, ¶ 29, 141 N.M. 831, 161 P.3d 876 ("we cannot allow an individual who would flout the law himself to continue to serve as a judge and to have power over members of his community.").

## III. CONCLUSION

{22} "The conduct prescribed for judges and justices is more stringent than conduct generally imposed on other public officials." *In re Romero*, 100 N.M. 180, 183, 668 P.2d 296, 299 (1983). Accordingly, judges must "respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." *Model Code of Judicial Conduct*, pmbl. ¶ 1. The reason for these standards is that "[t]he United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society." *Model Code of Judicial Conduct*, pmbl. ¶ 1. With these principles in mind, we hold that Griego must be removed from the bench.

{23} **IT IS SO ORDERED.**

EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and A. JOSEPH ALARID, Judge, Sitting by Designation.