# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-007

Filing Date: March 14, 2013

Docket No. 33,601

INQUIRY CONCERNING A JUDGE
NO. 2011-035

IN THE MATTER OF STEPHEN S. SALAZAR,
Municipal Court Judge, Española, New Mexico

Randall D. Roybal
Robin S. Hammer
Phyllis A. Dominguez
Albuquerque, NM

for Judicial Standards Commission

Dan Cron Law Firm, P.C.
Dan Cron
Santa Fe, NM

for Respondent

## OPINION

### MAES, Chief Justice

{1}     This matter comes before this Court upon a petition for discipline filed by the Judicial Standards Commission (Commission) concerning the Honorable Stephen S. Salazar (Respondent), a municipal court judge in Española, New Mexico.  On July 18, 2012, we heard oral argument in this matter.  On August 1, 2012, we issued an order accepting the Commission's recommendation for discipline suspending Respondent without pay for ninety (90) days, placing Respondent on probation for the remainder of his current term of office, requiring Respondent to pay restitution to the injured parties, requiring Respondent to pay all costs associated with the disciplinary process, and ordering a public censure of Respondent.  The following will serve as Respondent's public censure to be posted on the New Mexico Compilation Commission web site and in the *Bar Bulletin*.  *See* Rule 17-206(D) NMRA.

### FACTS

**{2}**     Respondent has admitted to the conduct leading to his discipline in this matter, which arose in the context of a towed motorcycle. David Vigil, the son of a member of Respondent's church and an acquaintance of Respondent, manufactured a custom chopper motorcycle which he allowed Mr. John Martinez to test ride. Mr. Vigil did not produce a title to the vehicle prior to allowing Mr. Martinez to test ride it. Ohkay Owingeh police towed the motorcycle during the course of a criminal case for domestic violence against Mr. Martinez. Mr. Martinez's case was filed in Rio Arriba County Magistrate Court. The seized motorcycle was towed by George and David Luna d/b/a Aces Towing and Recovery, LLC.

**{3}**     Following the motorcycle seizure, Mr. Vigil phoned Respondent and left messages for him. On October 21, 2010, Mr. Vigil went to the Española Municipal Court and spoke to Respondent in the lobby of the courthouse. Respondent directed Mr. Vigil to have his attorney, Santiago Juarez, draft an ex parte order regarding the motorcycle. Respondent also spoke on the phone ex parte with Mr. Juarez regarding the order. On October 22, 2010, Mr. Vigil delivered the order to Respondent in the lobby of the courthouse and Respondent signed the order. Respondent did not keep a copy of the order and gave the original signed order to Mr. Vigil.

**{4}**     In the order, Respondent directed George Luna and Aces Towing to return Mr. Vigil's motorcycle. The order falsely stated that Respondent had held a hearing on the matter. Respondent did not give notice or an opportunity to be heard to the Lunas or their company. In addition, Respondent embossed the official seal of the Española Municipal Court upon the order even though there was no case pending or court file existing in that court for the matter. Respondent also failed to inquire if Mr. Vigil's matter was pending in Rio Arriba County Magistrate Court or was part of any other action in any other court. On October 22, 2010, Mr. Martinez's case was, in fact, pending in Rio Arriba County Magistrate Court.

**{5}**     When Respondent signed the order, he was on probation with the Commission following a trial before the Commission in November 2009 in Inquiry Nos. 2006-075, 2007-033, and 2007-086. As a condition of his probation, Respondent was being mentored and supervised by the Honorable Peggy Nelson, a retired judge from the Eighth Judicial District. Respondent did not notify Judge Nelson prior to or after issuing the order.

**{6}**     On November 17, 2010, George Luna and Aces Towing filed a Petition for Writ of Prohibition and Superintending Control (writ petition) in the district court seeking to quash Respondent's order. Respondent did not notify Judge Nelson that he was the subject of the writ petition. On June 30, 2011, the First Judicial District Court granted the writ petition and quashed the order. Respondent never rescinded the order, stating that he did not do so on the advice of counsel.

**DISCUSSION**

**{7}**     Our system of government is only as strong as the integrity of its members.  The judiciary, as a co-equal branch of government, must ensure that its members possess integrity and maintain high standards of conduct.  Our Constitution has vested this Court and the Commission with the great responsibility of maintaining the integrity of the judiciary. *See* N.M. Const. art. VI, § 32.  When a member of the judiciary commits willful misconduct in office, we must act to restore confidence in the judiciary by imposing strong and appropriate discipline.

**{8}**     Respondent has conceded that his conduct constituted willful misconduct in office. Under Article VI, § 32 of the New Mexico Constitution, "any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office[.]"  Respondent admitted and the Commission concluded that Respondent violated several provisions of the Code of Judicial Conduct.  *See* Rules 21-100 NMRA (1995); 21-200(A) and (B) NMRA (1995); 21-300(A), (B)(2), (B)(5), (B)(7), and (B)(8) NMRA (2009).[1]  The Commission recommended that Respondent be suspended without pay for ninety days (90), receive a formal public censure, be placed on probation for the remainder of his current term of office, and pay the Commission's costs and expenses incurred in this matter.  Under Rule 27-401(A)(1)  NMRA (1996), we may accept, reject, or modify any or all of the recommendations for discipline set forth in the Petition.  It was with great reluctance that this Court accepted the recommendation of the Commission in this matter because Respondent came very close to being removed from office by this Court for the reasons we will explain below.

**Ex parte communications**

**{9}**     Respondent admitted that he engaged in ex parte communications with both Mr. Vigil and Mr. Juarez.  Respondent spoke with Mr. Vigil and Mr. Juarez outside the presence of the Lunas or their company on October 21, 2010, at the Española Municipal Court, directing Mr. Juarez to draft an order regarding the motorcycle.  Respondent subsequently spoke on the phone ex parte with Mr. Juarez regarding the release order.  Finally, Respondent spoke with Mr. Vigil outside the presence of the Lunas or their company in the lobby of his courthouse when Mr. Vigil delivered the order to Respondent for his signature on October 22, 2010.  Respondent did not give notice to or otherwise attempt to include the Lunas or their company in his communications with Mr. Vigil and his lawyer.

**{10}**     "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."  Rule 21-300(B)(7).  Therefore, "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other

---

[1] We have cited to the previous version of the Code of Judicial Conduct as Respondent's conduct occurred before the new Code became effective on January 1, 2012. Please consult the table of corresponding rules contained in the NMRA to find  which old provision corresponds to a new provision.

communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . ." *Id.* "[A]ll parties or their lawyers shall be included in communications with a judge." *Id.* cmt.

**{11}** Respondent's conduct clearly violated Rule 21-300(B)(7). Under Rule 21-300(B)(7), Respondent should not have initiated, permitted or considered any of the foregoing communications. Notwithstanding the illegality of Respondent's release order, Respondent should have given notice and an opportunity to be heard to the Lunas and their company.

**{12}** Engaging in ex parte communications "demonstrates a lack of respect for the principles of fairness on which our judicial system is constructed." *See In re Griego*, 2008-NMSC-020, ¶ 19, 143 N.M. 698, 181 P.3d 690 (holding that a metropolitan court judge violated the rule against ex parte communications by adjudicating traffic cases for family and friends outside the presence of a representative of the state). Respondent's conduct was unfair to the Lunas and their company in many ways. The Lunas had no way of knowing that their custody of the motorcycle was being challenged because Mr. Vigil did not file any formal legal proceedings to regain custody of the motorcycle. Respondent could have given notice to the Lunas after he was first approached by Mr. Vigil but failed to do so. In addition, Respondent failed to check if there was a pending legal proceeding before signing the release order. Had Respondent checked the magistrate court docket, he might have discovered that the motorcycle was part of a pending case. From the beginning, Respondent's conduct was completely unfair to the Lunas.

**Issuance of release order without jurisdiction**

**{13}** The order signed by Respondent, directed George Luna and Aces Towing to return Mr. Vigil's motorcycle. Respondent did not have jurisdiction to issue the release order in the first place. A municipal court judge only has jurisdiction over offenses and complaints relating to ordinances of the municipality. NMSA 1978, § 35-14-2 (2011). The towed motorcycle was the subject of a pending domestic violence matter in Rio Arriba Magistrate Court, a different court. In any event, Aces Towing could not release the motorcycle, because the Public Regulation Commission requires that all towing companies release vehicles to persons who can provide proof of lawful ownership. *See* 18.3.12.24 NMAC (10/31/2011). At no time prior to October 22, 2010, did Mr. Vigil produce legally adequate proof of ownership of the motorcycle to Aces Towing or Respondent.

**{14}** "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Rule 21-200(A). A judge must also "be faithful to the law and maintain professional competence in it." Rule 21-300(B)(2). Finally, a judge "shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment." Rule 21-200(B).

**{15}** Not only did Respondent violate the foregoing rules, his conduct demonstrated a complete ignorance or indifference to his jurisdictional limitations. Respondent stated that

4

he thought he had jurisdiction because the City of Española Police Department seized the motorcycle, he believed there were no holds on the motorcycle, and the police department had facilitated the release of vehicles in the past. We are not persuaded by Respondent's excuses. One of the primary responsibilities of a judge in adjudicating any matter is determining whether the judge has jurisdiction over the matter. *Cf. Grace v. Oil Conservation Comm'n of N.M.*, 87 N.M. 205, 208 531P.2d 939, 942 ("A lack of jurisdiction means an entire lack of power to hear or determine the case . . . ."). Respondent should not have proceeded on the basis of a mere notion of jurisdiction. Part of maintaining a professional competence in the law includes determining jurisdiction. *See* Rule 21-300(A)(2). Respondent failed to even inquire if any matter relating to Mr. Vigil's motorcycle was pending in his court or magistrate court. In addition, Respondent had access to an experienced and well-respected district judge as a mentor for guidance at the time. Respondent inexplicably failed to call upon her wisdom and experience to navigate the situation.

**{16}** Respondent's failure to perform due diligence harmed not only the Lunas, but the reputation of the judiciary. When a judge does not respect and comply with the law "[p]ublic confidence in the judiciary is eroded." *Id.* cmt. If judges who are called upon to interpret and enforce the law do not comply with the law, it would be unreasonable to expect ordinary citizens to do the same. *See* Rule 21-100 cmt. ("[V]iolation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law."). In addition, Respondent's conduct created the appearance that he bent the rules to help an acquaintance. "[T]he integrity and independence of judges depends . . . upon their acting without fear or favor." Rule 21-100 cmt. In a recent public censure, we discussed the recurring ethical problems judges in small communities face. *See In Re Rael*, S. Ct. No. 33,633 (Public Censure filed Oct. 3, 2012). We strongly suggest that Respondent take to heart the lessons contained in that censure.

**Willful misconduct while on probation**

**{17}** Another troubling aspect of this case is that Respondent was on probation with the Commission in another matter when he committed willful misconduct in office. Respondent was placed on probation by the Commission for one year beginning in January 2010. This disciplinary matter never reached this Court because the Commission is not required to bring "non-disciplinary" dispositions to the Court. *See* Commission Rule 30 (requiring "discipline" recommendations to be reported to the Court); Rule 33 (defining non-disciplinary dispositions). Respondent was clearly within his probationary period when he issued the release order on October 22, 2010.

**{18}** "[R]epetition of the very conduct that had been characterized by the Commission as improper cannot be said to be anything other than willful judicial misconduct." *Matter of Castellano,* 119 N.M. 140, 149, 889 P.2d 175, 184 (1995). It matters not that the proper discipline imposed by the Commission was informal in nature and not directly imposed by this Court. When imposing discipline on judges, we consider "whether there have been

5

previous violations, and the effect of the improper activity upon the judicial system or others." *In Re Griego,* 2008-NMSC-020, ¶ 13 (internal quotation marks and citation omitted).

**{19}** In arguing for lesser punishment, Respondent stated that he had successfully addressed issues from his previous case demonstrating a capacity to learn from his mistakes and implement appropriate procedures suggested to him. Despite Respondent's stated progress through mentorship, the violation of his probation shows not only disrespect for the Commission's previous order, but disrespect for our system of judicial discipline. Respondent had a retired district judge at his disposal for guidance. We are concerned that Respondent did not notify his mentor regarding the release order situation, especially after the filing of the subsequent writ petition. If Respondent is indeed making progress through mentorship, his failure to report these matters to his mentor reveals a troublesome blind spot. Respondent has been a judge for ten years and has had ample time to acquire the skills necessary to perform his duties adequately, professionally and free from impropriety. Unfortunately, his conduct in this matter reveals that he still has much to learn.

**CONCLUSION**

**{20}** As we already noted above and expressed at the hearing in this proceeding, Respondent came very close to being removed from office. Although we accepted the Commission's recommended disciplinary measures as appropriate, we must warn Respondent that this is his last chance to reform his conduct on the bench.

**{21}** By imposing discipline in this matter, this Court acts to reaffirm and restore public confidence in the administration of justice and to preserve the integrity and independence of the judiciary. The ninety-day suspension without pay, public censure, probation, and required restitution to the injured parties are necessary to deter Respondent from repeating such conduct while also reaffirming and restoring public confidence in the integrity of the judiciary. This public censure should serve as a warning to all judges that the willful misconduct that Respondent engaged in during his probationary period will not be tolerated.

**{22}   IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

6

<u>                                             </u>
**CHARLES W. DANIELS, Justice**

**BARBARA J. VIGIL, Justice**, **not participating**

**Topic Index for *In the Matter of Salazar*, No. 33,601**

**JUDGES**
Code of Judicial Conduct
Propriety of Conduct

**JUDGMENT**
Ex Parte Order

**JURISDICTION**
Municipal Court