IN RE: Michael J. SULLIVAN, Former Judge, Philadelphia Traffic Court, Philadelphia County.

No. 2 JD 13
No. 5 JD 14
No. 9 JD 15

Court of Judicial Discipline of Pennsylvania.

FILED: January 14, 2016

Honorable Robert A. Graci, Chief Counsel, Judicial Conduct Board.

James P. Kleman, Jr., Deputy Counsel, Judicial Conduct Board.

Samuel C. Stretton, Esquire, West Chester, PA, Counsel for Respondent.

BEFORE: Honorable Robert J. Colville, P.J., Honorable Carmella Mullen, J., Honorable Jack A. Panella, J., Honorable John J. Soroko, J., Honorable David J. Shrager, J., Honorable David J. Barton, JJ.

## OPINION BY JUDGE JACK PANELLA

There is no place for corruption in the Pennsylvania judiciary. No type of corruption is acceptable in Pennsylvania.

## PROCEDURAL SUMMARY

There are three docket entries for Michael J. Sullivan, the Respondent and a former judge of the Philadelphia Traffic Court.[1] The Judicial Conduct Board initially filed a petition for interim suspension on January 31, 2013. That petition was docketed to No. 2 JD 2013. On August 9, 2013, this Court entered a decision and order which suspended Sullivan, without pay, pending further order of court.[2] In accordance with our opinion and order of August 27, 2015, the suspension remains in effect.[3]

The Board filed a Complaint against Sullivan, docketed to No. 5 JD 2014, on December 22, 2014. This Complaint alleged, inter alia, that Sullivan had participated in the practice of "giving favorable treatment in traffic court cases" to certain defendants during his tenure as a judge on the Philadelphia Traffic Court and, importantly, after he became Administrative Judge. The Complaint included allegations that favorable treatment was extended to defendants who were somehow connected or related to judges of the Traffic Court.

The Complaint concluded that Sullivan is subject to discipline pursuant to Article V, §§ 17(b) & 18(d)(1) of the Pennsylvania Constitution.

On April 14, 2015, the Board filed a second complaint against Sullivan, docketed to No. 9 JD 2015, alleging that although Sullivan had been found "not guilty" of violating federal criminal statutes, his conduct as alleged in the federal prosecution constituted violations of the Pennsylvania Constitution and the Rules Governing Standards of Conduct of Magisterial District Judges applicable to Philadelphia

---

1. On June 19, 2013, Act 17 of 2013 was signed into law by the then Governor, effectively abolishing the Philadelphia Traffic Court. On May 7, 2014, the Pennsylvania Supreme Court approved the rescission of rules governing the Philadelphia Traffic Court and transferred that court's functions to the Traffic Division of the Philadelphia Municipal Court. Philadelphia Traffic Court will be offi- cially abolished by amendment of the Pennsylvania Constitution in January 2018.

2. *In re: Michael Sullivan,* 74 A.3d 1187 (Pa. Ct. Jud. Disc. 2013).

3. *In re: Michael J. Sullivan,* 121 A.3d 623 (Pa. Ct. Jud. Disc. 2015).

Traffic Court judges.[4] Numerous fact-specific cases were cited in the new Complaint, including the matters involving Michael Ambron and David Callsen, Jr., as well as former senior Magisterial District Judge Kenneth Miller, which implicated Sullivan in a system of special treatment for certain defendants. The Complaint again concluded that Sullivan is subject to discipline pursuant to Article V, §§ 17(b) & 18(d)(1) of the Pennsylvania Constitution.

At the Pre-trial Conference held on August 13, 2015, all three cases were consolidated.

A trial was held on November 6, 2015, in Philadelphia. The Board was represented by James P. Kleman, Jr., Esq., Deputy Counsel; former Judge Sullivan was represented by Samuel Stretton, Esq. At the trial, the following witnesses were called by the Board;

1) Danielle Czerniakowski

2) Richard Delario

3) In rebuttal: Francis J. Puskas II, Esq., Deputy Chief Counsel of the Board

4) In rebuttal: James Morgan, Esq.

Former Judge Sullivan testified on his own behalf and also called Dominic Reda as a witness.

In addition to the evidence received on November 6, the Board and Sullivan have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1). At the time of the pre-trial conference, and at the trial, the Court accepted these stipulations of fact. Based upon the credible evidence from the trial, and the pertinent stipulations, the Court set forth the following Findings of Fact.

## FINDINGS OF FACT

1. The Judicial Conduct Board is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices or justices of the peace:

The board shall receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the board; ... determine whether there is probable cause to file formal charges against a justice, judge or justice of the peace for conduct proscribed by this section; and present the case in support of the charges before the Court of Judicial Discipline,

2. Former Judge Michael J. Sullivan (hereinafter "Respondent") previously served, until his suspension in 2012, as a judge of the Philadelphia Traffic Court.

3. Respondent served as Administrative Judge of the Philadelphia Traffic Court from April 27, 2011 until December 19, 2011.

4. By Per Curiam Order dated December 19, 2011, the Supreme Court of Pennsylvania relieved the Respondent of his assignment as Administrative Judge of the Philadelphia Traffic Court.

5. As a Philadelphia Traffic Court judge, the Respondent was at all times relevant hereto, subject to all the duties and responsibilities imposed on him by the Constitution of the Commonwealth of Pennsylvania and the Rules Governing Standards of Conduct of Magisterial District Judges, by virtue of Rule 18 of those Rules.

6. This matter was investigated by the Board at their own initiation.

---

4. The Respondent had been indicted in federal court on felony charges, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341. The Respondent was acquitted on all charges in federal court.

7. As a result of its investigation, the Board concluded that there was probable cause to file formal charges in this Court against the Respondent.

8. On occasion, Philadelphia Traffic Court judges, including the Respondent, requested favorable treatment for certain defendants that they knew from other Philadelphia Traffic Court judges.

9. After it was revealed publicly in the federal indictment against the Respondent and others, this practice of requesting favorable treatment became known as or referred to by the federal authorities as "special consideration," although the Philadelphia Traffic Court judges, employees and others in the system merely referred to it as "consideration" or "keeping an eye out."

10. The practice of requesting and providing special treatment for certain defendants in Philadelphia Traffic Court predated former Judge Sullivan's tenure as a traffic court judge and continued after he became a traffic court judge.

11. The individuals who received this "special consideration" included those defendants who were:

- politically connected;
- family members of the traffic court judges;
- personal friends of the traffic court judges; and
- court employees and family members of court employees.

12. The Respondent transmitted these requests for favorable treatment to other Philadelphia Traffic Court judges through Danielle Czerniakowski, a member of his judicial office staff since 2006.

13. Requests to the Respondent for "special consideration" were generally channeled through Czerniakowski.

14. When Czerniakowski received requests for "special consideration" for a defendant appearing before the Respondent, she communicated the request to the Respondent by placing an index card with the name of the defendant on the top of a case file folder listed for court.

15. The index card was usually discarded after the proceeding.

16. On occasion, requests for "special consideration" to the Respondent were provided to him through Richard Delario, a Philadelphia Traffic Court officer.

17. Typically, the Respondent required that defendants who requested "special consideration" or for whom "special consideration" was requested to appear in his courtroom when their case was called.

18. In May 2011, Michael Ambron was employed as a driver for Brightline Construction, Inc.

19. Brightline is owned by William Arnold.

20. The Respondent knew Arnold and would speak with him from time to time.

21. Arnold knew the Respondent's cell phone number in May 2011.

22. While driving a Brightline truck towing an excavator, Ambron got stuck under Hunting Park Bridge in the City of Philadelphia on May 12, 2011.

23. Ambron was issued two citations stemming from the bridge accident, i.e., Michael Ambron Citations X04074103 and X0407114.

24. Brightline was issued one citation for an invalid inspection stemming from the bridge accident, i.e., Brightline Citation X04074125.

25. On May 12, 2011, at 8:32 a.m., Arnold called the Respondent on his cell phone.

26. Arnold related the details of the accident to the Respondent.

27. After receiving the information about the accident, the Respondent gave instructions to Arnold as to where he should go In Traffic Court to get his truck out of impoundment.

28. The Respondent Instructed Arnold to send him a text message when Arnold arrived at Traffic Court to get the truck out of Impoundment.

29. When Arnold arrived to get the truck out of Impoundment, he spoke to the Respondent about the accident.

30. The two citations issued to Ambron and the single citation issued to Brightline had been scheduled for summary trial on July 13, 2011, at 9:00 a.m.

31. Ambron and Brightline pleaded not guilty; therefore, the trials went forward as scheduled.

32. Although Arnold tried to set up a lunch with the Respondent on two separate occasions, on May 13, 2011, and July 5, 2011, the Respondent was unavailable.

33. Arnold, as representative of Brightline, and Ambron, appeared in the Respondent's courtroom for trial on the citations on July 13, 2011.

34. Although the Respondent had spoken with Arnold on the day of the accident about the details of the accident, and although Arnold had attempted to get together with the Respondent for lunch, the Respondent did not recuse himself from conducting trial on any of the citations.

35. Although the Respondent had spoken with Arnold about the citations issued to Brightline and Ambron, he did not disclose this fact in open court prior to conducting trial on these citations.

36. The Respondent found both Ambron and Brightline not guilty of the citations issued to them.

37. At the trial held before the Respondent, the Ambron and Brightline citations were called one after another. Mr. Ambron appeared and pleaded "not guilty" but provided no other testimony or explanation as to a defense against his citations. Despite the fact that Mr. Ambron provided no defense, he was found not guilty.

38. At the trial held before the Respondent, the Brightline citation was dismissed even though Mr. Arnold, in his testimony in the federal trial, admitted that "it was a bad registration."

39. In 2009, David Callsen Jr. was employed as bartender at the Fireside Tavern.

40. The Fireside Tavern is an establishment owned by the Respondent's family that is located at Sixth Street and Oregon Avenue in the City of Philadelphia.

41. Callsen was cited for disregarding a red light on May 18, 2009, near the location of the Fireside Tavern, i.e., Callsen Citation S00660730.

42. According to the citation, a summary trial was scheduled for July 20, 2009, at 10:30 a.m.

43. Shortly after he had received the citation, Callsen discussed some of the details of the citation with the Respondent.

44. Callsen pleaded not guilty to the citation, and he appeared for trial on July 20, 2009.

45. The Respondent presided over Callsen's summary trial.

46. Callsen provided some of the same details to the Respondent at trial regarding his citation as he had prior to trial.

47. The Respondent found Callsen not guilty of the citation on July 20, 2009.

48. Former senior Magisterial District Judge Kenneth Miller was a Delaware County magisterial district judge who, fol-

lowing his retirement, was assigned to preside over cases in Traffic Court.

49. Danielle Czerniakowski, a member of the Respondent's staff, went to Miller on several occasions at Sullivan's request and provided him with pieces of paper with names of individuals appearing before him in Traffic Court cases.

50. The persons whose names were on the pieces of paper provided by Czerniakowski to Miller received special treatment in Miller's courtroom.

51. On one particular day, Czerniakowski brought Miller the names of five persons who were to appear before Miller that day.

52. Miller understood the names on the pieces of paper to be requests from Judge Sullivan to him for "special consideration" for those persons.

53. These cases were ultimately either dismissed or withdrawn with Miller's approval.

54. Former senior MDJ Miller pleaded guilty to one count of mail fraud resulting from his participation in the "special consideration" process in Traffic Court.

55. The Respondent resigned from office on August 21, 2015, during the pendency of these proceedings.

## SUMMARY OF CHARGES

A summary of the pertinent charges against the Respondent is as follows:

*9 JD 2015*

**Count 1(A–C)** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller

These three counts are based on Rule 2 of the Rules Governing Standards of Conduct of Magisterial District Judges—Impropriety and Appearance of Impropriety to be Avoided

**Count 2 (A–C)** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller

These counts are based on Rule 4(D) of the Rules Governing Standards of Conduct of Magisterial District Judges—Adjudicative Responsibilities

**Count 3** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller

This count is based on Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges—Incompatible Practices

**Count 4 (A–B)** Factual Basis: the circumstances regarding Callsen & Ambron/Brightline

These counts are based on Rule 8 of the Rules Governing Standards of Conduct of Magisterial District Judges—Disqualification

**Count 5 (A–C)** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller

These counts are based on Article V, § 18(d)(1) of the Pennsylvania Constitution: Conduct Brought the Judiciary into Disrepute

**Count 6** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller

This count is based on Article V, § 18(d)(1) of the Pennsylvania Constitution: Conduct Prejudiced the Proper Administration of Justice

**Count 7 (A–D)** Factual Basis: the circumstances regarding Callsen, Ambron/Brightline, and Former Senior MDJ Miller and supported by the alleged violations of Rules 2, 4(D), 8 and 13 of the Rules Governing Standards

of Conduct of Magisterial District Judges

These counts are based on Article V, § 17(b) of the Pennsylvania Constitution

### 5 JD 2014

**Count 1 (A)** Factual Basis: the allegations of "Special Consideration"

This count is based on Rule 2 of the Rules Governing Standards of Conduct of Magisterial District Judges—Impropriety and Appearance of Impropriety to be Avoided

**Count 2** Factual Basis: the allegations of "Special Consideration"

This count based on Rule 4(D) of the Rules Governing Standards of Conduct of Magisterial District Judges—Adjudicative Responsibilities

**Count 3 (A)** Factual Basis: the allegations of "Special Consideration"

This count is based on Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges—Incompatible Practices

**Count 4 (A)** Factual Basis: the allegations of "Special Consideration"

This count is based on Article V, § 18(d)(1) of the Pennsylvania Constitution: Conduct Brought the Judiciary into Disrepute

**Count 5 (A)** Factual Basis: the allegations of "Special Consideration"

This count is based on Article V, § 18(d)(1) of the Pennsylvania Constitution: Conduct Frustrated and Prejudiced the Proper Administration of Justice

**Count 6 (A–E)** Factual Basis: the allegations of "Special Consideration"

These counts are based on Article V, § 17(b) of the Pennsylvania Constitution

### PERTINENT SECTIONS OF THE PENNSYLVANIA CONSTITUTION AND RULES GOVERNING STANDARDS OF CONDUCT OF MAGISTERIAL DISTRICT JUDGES

#### Pennsylvania Constitution

Article V, § 17 **Prohibited Activities.**

§ 17(b):

(b) Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

Article V, § 18 **Suspension, Removal, Discipline and Other Sanctions.**

§ 18(d)(1):

(d) A justice, judge or justice of the peace shall be subject to disciplinary action pursuant to this section as follows:

(1) A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for conviction of a felony; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court. In the case of a mentally or physically disabled justice, judge or justice of the peace, the court may enter an order of removal from office, retirement, suspension or other limitations on the activities of the justice, judge or justice of the peace as warranted by the record. Upon a final order of the court for suspension without pay or removal, prior to any appeal, the justice,

judge or justice of the peace shall be suspended or removed from office; and the salary of the justice, judge or justice of the peace shall cease from the date of the order.

### Rules Governing Standards of Conduct of Magisterial District Judges

**Rule 2: Impropriety and Appearance of Impropriety to be Avoided.**

A. Magisterial district judges shall respect and comply with the law and shall conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Magisterial district judges shall not allow their family, social, or other relationships to influence their judicial conduct or judgment. They shall not lend the prestige of their office to advance the private interest of others, nor shall they conveyor permit others to convey the impression that they are in a special position to influence the judge.

**Rule 4; Adjudicative Responsibilities.**

D. Magisterial district judges shall accord to every person who is legally interested in a proceeding, or their lawyer, full right to be heard according to law and, except as provided by law, neither initiate nor consider ex *parte* or other communications concerning a pending or impending proceeding.

**Rule 8: Disqualification.**

A. Magisterial district judges shall disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where: (1) they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings[.]

**Rule 13: Incompatible Practices.**

Magisterial district judges and all employees assigned to or appointed by magisterial district judges shall not engage, directly or indirectly, in any activity or act incompatible with the expeditious, proper and impartial discharge of their duties, including, but not limited to: (1) in any activity prohibited by law[.]

## DISCUSSION

The Board has charged that the conduct of the Respondent subjects him to discipline under Article V, Section 18(d)(1) of the Pennsylvania Constitution because that conduct constitutes:

1. such that brings the judicial office into disrepute,

2. such that prejudices the proper administration of justice,

3. a violation of Rules 2, 4(D), 8 and 13 of the Rules Governing Standards of Conduct of Magisterial District Judges, and

4. a violation of Article V, Section 17(b) of the Pennsylvania Constitution by virtue of his violation of the Rules Governing Standards of Conduct of Magisterial District Judges.

"The CJD has original jurisdiction over actions alleging judicial wrongdoing prosecuted by the Board. *See* Pa. Const. Art. V, § 18(b)(5). The Supreme Court has exclusive jurisdiction over appeals from the CJD. 42 Pa.C.S. § 725(2); *see* Pa. Const. Art. V, § 18(c)(1)." *In re Bruno*, 627 Pa. 505, 101 A.3d 635, 662 (2014). "Judicial conduct proceedings are considered quasi-criminal in nature, and, therefore, the Respondent is afforded the same constitutional rights as are criminal defendants." *See, In re Merlo*, 619 Pa. 1, 14, 58 A.3d 1, 8 (2012). At trial before the Court of Judicial Discipline, the Board must prove the charges by clear and convincing evidence. *See id.*

### Former Senior Magisterial District Judge Kenneth Miller

■ In relation to Sullivan's contacts with Miller, Sullivan is charged with violating Article V, § 18(d)(1) of the Pennsylvania Constitution, which prohibits conduct which brings the judicial office into disrepute and prejudices the proper administration of justice. We have previously examined these constitutional mandates in a number of cases.

In *In re Cicchetti*, 697 A.2d 297 (Pa. Ct. Jud. Disc. 1997), we said:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312, In *In re Smith*, 687 A.2d 1229 (Pa. Ct. Jud. Disc. 1996), we said: "'Disrepute' necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct." *Id.* at 1239.

In *In re Trkula*, 699 A.2d 3 (Pa. Ct. Jud. Disc. 1997), we addressed this constitutional provision in the context of a case involving ex parte communications:

Certainly the reasonable expectations of the public would include the expectation that a judicial officer will not make an overt, ex parte attempt to influence the outcome of a case on appeal from his or her court, to the detriment of the appellant.

*Id.* at 7.

As we observed in *In re Joyce and Terrick*, 712 A.2d 834 (Pa. Ct. Jud. Disc. 1998), the reasonable expectations of the public would certainly include the belief that a judicial officer will not make an overt, ex parte attempt to influence the outcome of any case to the detriment of any party. Consequently, we conclude that the conduct of Respondent was such as to bring the judicial office into disrepute. It is uncontested that Danielle Czerniakowski, a member of Sullivan's staff, delivered to Miller, on several occasions, names of individuals appearing in Traffic Court cases, and that Miller understood the names on the pieces of paper to be requests from Judge Sullivan to him for special treatment. This was a clear, overt, ex parte means to influence the case in favor of these individuals.

The evidence regarding Sullivan's contacts with Miller also supports another violation of Article V, § 18(d)(1) of the Pennsylvania Constitution, i.e., the provision which prohibits conduct which prejudices the proper administration of justice. In *In re Smith*, we said:

[W]hen a judicial officer's conduct departs from the standard expected of judges and has the effect of obstructing or interfering with the systematic operation or normal functions of the court, his conduct will have effected the proper administration of the courts.

687 A.2d at 1237. When Respondent had his list of defendants delivered to Miller, he was doing nothing if not "interfering with the systematic operation or normal functions of the court." Unsurprisingly, his conduct interfered with the proper administration of the traffic courts.

■ In addition, as we said in *Trkula:*

A judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some ... impropriety, *but also acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example by effecting a specific outcome.*

*Trkula,* 699 A.2d at 8 (quoting *Smith,* 687 A.2d at 1238) (emphasis added). In having the list delivered to Miller, Sullivan had no other purpose than to "[effect] a specific outcome" and, in so doing, he "acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice."

This conduct also violated Rule 2 of the Rules Governing Standards of Conduct of Magisterial District Judges, in light of the fact that Respondent was lending the prestige of his office to advance the private interests of others. By initiating ex parte contact with Miller, Respondent's conduct violated Rule 4 as well.

 Because it violated those two Rules, the same conduct was also an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution which provides in part that: "Magisterial district judges shall be governed by rules or canons which shall be prescribed by the Supreme Court." [5]

*Commonwealth v. Michael Ambron/Brightline Construction Commonwealth of Pennsylvania v. David Callsen, Jr.*

 It is uncontested that William Arnold, the owner of Brightline Construction, Inc., contacted the Respondent about three citations that were pending before the Respondent:

 1. Two citations issued against Michael Ambron, an employee of Brightline, i.e., Michael Ambron Citations X04074103 and X0407114;

 2. Citation X04074125 issued against Brightline.

The two citations filed against Ambron were related to his operation of a Brightline truck on May 12, 2011. The citation against Brightline was for an invalid inspection.

It is also uncontested that David Callsen discussed some of the details of the citation he received for disregarding a red light with Respondent before Respondent presided over his summary trial.

Prior to the hearing, Mr. Arnold provided detailed information to the Respondent about the incident which led to the three citations. This telephone call was intercepted by federal authorities.[6] The Respondent did not disclose this contact to the prosecutor's office and did not recuse from hearing the case, but rather gave Mr. Arnold instructions on how to retrieve his truck from impoundment, and then found Mr. Ambron and Brightline not guilty of the aforesaid citations.

David Callsen was employed as a bartender at the Fireside Tavern, an establishment owned by Sullivan's family. After he had received a citation for disregarding a red light, Callsen discussed some of the details of the citation with Sullivan. After Callsen had entered a plea of not guilty, Sullivan presided over his trial and subsequently found him not guilty.

Rule 2A of the Rules Governing standards of Conduct of Magisterial District Judges is nearly identical to Canon 2 of the Code of Judicial Conduct. Our Supreme Court has expressed the mandate that Canon 2 addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activi-

---

5. "Thus, a violation of the Rules Governing Standards of Conduct of Magisterial District Judges is an automatic, derivative violation of § 17(b) of the Constitution." *In re Ballentine,* 86 A.3d 958, 966 (Pa. Ct. Jud. Disc. 2013).

6. Mr. Arnold's and Mr. Ambron's testimony from the prior trial held in federal court was admitted without objection as Board Exhibit No. 3. (N.T. Trial 11/6/2015 at 138 & 141).

ties, but also covers conduct which does not involve the judicial-decision making process. *See, In re Carney,* 621 Pa. 476, 79 A.3d 490, 507 (2013).

Here, the Respondent's conduct occurred in the decision-making process; the conduct in question, receiving ex-parte information and not disclosing the contact, and not recusing after the receipt of the information, impacted upon the Respondent's decision to dismiss the three citations in the Ambron/Brightline cases and the citation issued to David Callsen. Therefore, we hold that Respondent violated Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judges.

In reviewing the Board's allegations that Respondent violated Rule 8A, we find that Respondent's impartiality to hear and decide the three citations in the Ambron/Brightline cases and the citation issued to David Callsen would have reasonably been questioned had Sullivan disclosed his prior conversations about these cases. The unrefuted circumstances which lead to this conclusion include the multiple contacts between Respondent and Mr. Arnold as well as the assistance the Respondent provided to enable Mr. Arnold to get his truck out of impoundment. At no time did the Respondent disclose his conversation with David Callsen or his association with the Fireside Tavern.

■ Disqualification must be determined on a case-by-case basis. *See, In re McCutcheon,* 846 A.2d 801, 816 (Pa. Ct. Jud. Disc. 2004). In *McCutcheon,* this court found that the Board had failed to establish a personal bias in favor of a litigant such as would have caused the MDJ's impartiality to be called into question. 846 A.2d at 816. However, in this case, the Respondent's extended contacts with Mr. Arnold, and his discussion with

David Callsen, appropriately call into question his ability to remain impartial, similar to the situation in *In re Zupsic,* 893 A.2d 875 (Pa. Ct. Jud. Disc. 2005).

For the same reasons, we find that Respondent violated Rule 4D. That Rule prohibits magisterial district judges from considering *ex parte* communications regarding a pending or impending proceeding. The reasonable inference from the uncontested evidence is that Respondent used the information he received from his out-of-court contacts with Mr. Arnold and Mr. Callsen to decide the cases when they were finally brought before him.

The Board has also charged that Respondent has, by virtue of his violation of Rules 2A, 4D and 8A of the Rules Governing Standards of Conduct of Magisterial District Judges, violated Article V, § 17(b) of the Pennsylvania Constitution. As we stated above, a violation of the Rules Governing Standards of Conduct for District Justices is an automatic, derivative violation of § 17(b) of the Pennsylvania Constitution.

■ Having found that Respondent is subject to discipline for conduct which violates Rules 2A, 4D and 8A of the Rules Governing Standards of Conduct of Magisterial District Judges, as well as a violation of Article V, § 17(b) of the Pennsylvania Constitution, it is not strictly necessary to address the other counts which charge that the same conduct constitutes a violation of other rules. As we stated in *In re Eagen,* 814 A.2d 304, 306–07 (Pa. Ct. Jud. Disc. 2002):

> Unlike a criminal case in which the range of penalties is determined by the number of charges and the statutory sentence mandated for each offense upon which there is a finding of guilt, the scope of sanctions available to this Court is not so circumscribed. Any

finding by this Court, that a judicial officer has violated the Constitution of Pennsylvania or the Code of Judicial Conduct subjects that judge to the full range of appropriate discipline. Furthermore, in exercising our discretion in imposing disciplinary sanction, we are guided not by the number of ways the Respondent's conduct has offended the Constitution or Code, but by the nature of the conduct itself and any mitigating or aggravating circumstances.

*See, also, In re Murphy,* 10 A.3d 932, 937 (Pa. Ct. Jud. Disc. 2010).

### System of Special Consideration

■ We now turn to the Board's request that we find Respondent in violation of the Pennsylvania Constitution because his conduct in participating in this system of "special consideration" prejudiced the proper administration of justice and brought the judicial office into disrepute.

Respondent's willful misconduct, exemplified by his numerous violations of the Rules Governing Standards of Conduct of Magisterial District Judges, runs counter to the proper operation of the judicial system. The process afforded to his friends and family, and those with political connections, was different from that given to other members of the general public. In short, Respondent and the colleagues who joined him in this system were "fixing tickets."

This difference in the process, now that it has been exposed, solidified the perception that judges in Traffic Court were bestowing favorable treatment to connected individuals, rather than deciding cases fairly and impartially. A more apparent case of conduct which brings the judicial office into disrepute is difficult to perceive.

Respondent argues that this system of favoritism was in place when he took office, and was well known throughout the local judicial community. He also argues that he received no monetary benefit from his continuation of this system. Nevertheless, we note that prior decisions of this Court have denounced this practice.

In *In re Kelly,* 757 A.2d 456 (Pa. Ct. Jud. Disc. 2000), a senior Magistrate District Justice (the title was then District Justice), who contacted another MDJ about a friend's traffic violation, stated "I would appreciate your help" and then requested that his friend be found not guilty, was found to have brought the judicial office into disrepute. In *In re Trkula,* 699 A.2d 3 (Pa. Ct. Jud. Disc. 1997), the Respondent contacted the Statutory Appeals Unit of Allegheny County seeking to influence the outcome of a case on appeal from her court. In *In re Joyce and Terrick,* 712 A.2d 834 (Pa. Ct. Jud. Disc. 1998), Respondents had contacted the Statutory Appeals Unit seeking special treatment for defendants who had appealed cases to that court. In all these cases the Court of Judicial Discipline found violations of Article V, Section 18(d)(1) of the Pennsylvania Constitution. The conduct identified by this Court to be in violation of the Constitution is almost identical to the conduct of this Respondent herein, different only in the sense of the magnitude of the case fixing.

As we said in *Kelly* back in the year 2000: "[H]owever common and routine the practice of tampering with the disposition of Motor Vehicle Code violations including traffic tickets may have been in earlier eras, the practice is in the present time repellent to principles of equal justice under the law for all citizens." 757 A.2d at 461. When this practice is extended to multiple judges, or an entire court, our entire judicial system is in jeopardy. The Maryland Court of Appeals, quoting the Maryland Commission on Judicial Disabilities, said it well:

If we give credence to the notion that because an individual ... ticket is of minor importance and that it is somehow permissible for a judge hearing a ... ticket case to engage in personal or political favoritism, then we condemn the whole judicial system to suspected corruption.

*In re Diener,* 268 Md. 659, 682, 304 A.2d 587, 599 (1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974).

In addressing a case where a judge was found to have shown partiality in favor of family, friends and politically connected defendants in traffic court cases, the Supreme Court of New Mexico summarized the dangers of a corrupt court system:

> [The judge's] conduct demonstrates a lack of respect for the principles of fairness on which our judicial system is constructed, "Procedural due process requires a fair and impartial hearing before a trier of fact who is disinterested and free from any form of bias or predisposition regarding the outcome of the case." Equal protection, both federal and state, guarantees that the government will treat individuals similarly situated in an equal manner. These are bedrock principles of law that judges are sworn to uphold.

*In re Griego,* 2008-NMSC-020, 143 N.M. 698, 703–04, 181 P.3d 690, 695–96.

In conclusion, we have the responsibility pursuant to Article V, § 18(b)(5) of the Pennsylvania Constitution to review the evidence and make a decision, based upon the standard of clear and convincing evidence, as to whether a sanction should be imposed against a judicial officer. In light of the Findings of Fact and Discussion above, we discharge this constitutional duty by entering the following Conclusions of Law.

## CONCLUSIONS OF LAW

Respondent's conduct, as set out in Findings of Fact Nos. 1–53, constitutes:

A. a violation of Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judges,

B. a violation of Rule 4D of the Rules Governing Standards of Conduct of Magisterial District Judges,

C. a violation of Rule 8A of the Rules Governing Standards of Conduct of Magisterial District Judges,

D. conduct such that brings the judicial office into disrepute, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution,

E. conduct such that prejudices the proper administration of justice, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution, and

F. inasmuch as it has been found that Respondent's conduct constitutes a violation of Rules 2A, 4D and 8A the Rules Governing Standards of Conduct of Magisterial District Judges, it is an automatic, derivative violation of Article V, § 17(b) of the Pennsylvania Constitution.

## ORDER OF COURT

PER CURIAM

AND NOW, this 14th day of January, 2016, based upon the Conclusions of Law, it is hereby ORDERED:

1. Pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

2. Either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

3. In the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and issue an Order setting a date for such oral argument,

4. In the event objections are not filed, within the time set forth above, the Findings of Fact and Conclusions of Law shall become final, and this Court will conduct a hearing on the issue of sanctions on Friday, February 5, 2016, at 11:00 a.m. in Commonwealth Court Courtroom 5001, Fifth Floor, Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania.

5. The Judicial Conduct Board and the Respondent shall each file on or before February 1, 2016, a list of such witnesses as either party may intend to present for testimony at that hearing, and shall serve a copy of said list upon the other party.